**IV. The respondent was denied her due process rights where counsel was not permitted the opportunity to make closing arguments or any meaningful opportunity to directly address any legal or factual issues, particularly the legal standards to be applied with regard to the respondent's various applications for relief**

It is well settled that aliens are entitled to due process of law in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). Due process requires that an alien be afforded a full and fair hearing.

At the close of respondent's hearing, the IJ abruptly stated that "we're off the record for the oral decision" and immediately left the courtroom, allowing no opportunity for closing arguments. Tr. at 188. The IJ appeared to be in a rush to bring the proceedings to a close within the time allotted for the hearing.

This failure to allow a closing argument at the hearing on the merits was a denial of due process to which respondent was entitled. Denial of the opportunity to present opening statements or closing arguments at a deportation proceeding may constitute a due process violation. See Gilaj v. Gonzales, 408 F.3d 275, 290 (6th Cir. 2005); see also, Castellano-Chacon v. INS, 341 F.3d 533, 552-53 (6th Cir. 2003). It has been acknowledged, in the context of deportation proceedings, that "opening and closing arguments are critically important in sharpening and clarifying issues for resolution in our adversary system." Castellano-Chacon, 341 F.3d at 553.

It has been observed that "careless observance by an agency of its own administrative processes weakens its effectiveness in the eyes of the public because it exposes the possibility of favoritism and of inconsistent application of the law". Montilla v. INS, 926 F.2d 162, 169 (2d Cir. 1991). Had the IJ allowed closing arguments, many of the numerous errors of fact and law contained within his decision might have been averted. Given the enormous impact of deportation upon the lives of respondent and her family, it was reversible error by the IJ to fail to allow respondent's counsel an opportunity to address the factual record and offer a legal analysis.

## Conclusion

Accordingly, respondent's application for a Section 209(b) waiver in conjunction with her application for adjustment of status should be granted, alternatively, respondent's conviction should not be considered to constitute a "particularly serious crime," and if not, respondent is eligible for withholding of removal pursuant to Section 241(b)(3) of the INA since the respondent has, in fact, under the relevant legal standard demonstrated either past persecution or a likelihood of future persecution. In the alternative, the respondent should be granted withholding of removal under Article 3 of CAT.

Respectfully submitted,

Edwin T. Gania

Edwin T. Gania
Attorney for respondent

Mark Jacob Thomas & Associates
11 S. LaSalle Street
Suite 2800
Chicago, IL 60603
(312) 236-3163

Certificate of Service

I, Edwin Gania, an Attorney, certify that I caused a copy of the enclosed documents to be served by placing a true and correct copy for delivery with the U.S. postal service in an envelope addressed to:

U.S. Department of Homeland Security
Office of the District Counsel
Immigration and Customs Enforcement
450 Main Street, Room 483
Hartford, CT 06103

on this ___24th_____ day of _______April_______, 2008.

Edwin T. Gania

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Gania, Edwin T., Esquire**
**11 S. LaSalle St., Ste. 2800**
**Chicago, IL 60603-0000**

**U.S. DHS/HAR**
**450 Main St, Room 483**
**Hartford, CT 06103-3060**

**Name: YALINCAK, AYFER** **A73-393-720**

**Date of this notice: 5/22/2008**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
HESS, FRED

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File: A73 393 720 - Hartford, CT

Date: MAY 2 2 2008

In re: AYFER YALINCAK

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Edwin T. Gania, Esquire

ON BEHALF OF DHS: Patricia J. Flanagan
Assistant Chief Counsel

CHARGE:

Notice: Sec. 237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] - Convicted of aggravated felony (as defined in section 101(a)(43)(M))

Sec. 237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] - Convicted of aggravated felony (as defined in section 101(a)(43)(U))

APPLICATION: Withholding of removal; waiver of inadmissibility

The respondent's appeal of the Immigration Judge's January 16, 2008, decision denying her applications for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), and under the Convention Against Torture, 8 C.F.R. §§ 1208.16-.18 (2008), and for a waiver under section 209(c) of the Act, 8 U.S.C. § 1159(c), will be dismissed.

The respondent, a native and citizen of Turkey, was admitted to the United States as a visitor on May 4, 1992 (Exh. 1). On April 4, 1998, the respondent was granted asylum by an Immigration Judge (Exh. 1). Subsequently, on March 19, 2007, the respondent was convicted in the United States District Court, District of Connecticut, for the offense of conspiracy in violation of 18 U.S.C. § 371 (Exhs. 1 and 3). The respondent was sentenced to 24 months' imprisonment and 36 months' supervised release (Exh. 3).[1] On the basis of this conviction, the respondent was placed into the instant proceedings with the issuance of the Notice to Appear on July 23, 2007 (Exh. 1). During her proceedings, the respondent filed an application for asylum and withholding of removal under the Act and the Convention Against Torture and also requested a waiver under section 209(c) of the Act in order to adjust her status (Exh. 5).

---

[1] The record also contains evidence of the respondent's September 22, 1995, conviction in the State of Indiana for the offense of practicing medicine without a license in violation of section 25-22.5-8-1 of the Indiana Code (Exh. 3). For this offense, the respondent was sentenced to 8 years in prison, 4 years of the sentence being suspended (Exh. 3).

In his January 16, 2008, decision, the Immigration Judge first concluded that the respondent's 2007 conviction was one for a "particularly serious crime" rendering her ineligible for withholding of removal (I.J. at 11-12). In particular, the Immigration Judge noted the respondent's 24 month prison sentence, her 36 months of supervised release, and the order of restitution for her crime for $2,250,000 (I.J. at 11-12). The Immigration Judge also denied the respondent's application for withholding of removal based upon his adverse credibility determination and his alternative finding that the respondent failed to establish her burden of proof in establishing past persecution or a likelihood of future persecution and/or torture in Turkey (I.J. at 12-15). In this regard, the Immigration Judge cited to inconsistencies between the respondent's testimony and her brother-in-law's affidavit regarding the issue of whether she sold her home and gave all of her personal possessions in Turkey to her brother-in-law when she left Turkey and the inconsistencies between the respondent's testimony and that of her husband as to whether or not they had received any threats by the PKK in Turkey causing them to flee (I.J. at 12-15). The Immigration Judge also noted that, even if credible, the events as testified to by the respondent did not rise to the level of persecution and that she had failed to show that anyone in Turkey would seek to harm her if she returned (I.J. at 12-15).

In denying the respondent's application for a waiver under section 209(c) of the Act, the Immigration Judge noted the serious adverse factors weighing against the respondent specifically addressing her criminal convictions and continuous participation in fraudulent activities even after being punished (I.J. at 15-16). The Immigration Judge also noted the respondent's positive factors such as her son and daughter in the United States, the fact that the status of her family members hinges upon her own status, and the hardships the family would endure especially in consideration of the respondent's health problems (I.J. at 16).[2] In the end, the Immigration Judge could not find that the favorable factors outweighed the respondent's serious criminal history, and denied the application in his discretion (I.J. at 17). The respondent appeals disputing the Immigration Judge's "particularly serious crime" determination, his denial of her application for withholding of removal on the merits, his denial of her application for a waiver under section 209(c) of the Act in his discretion, and arguing that her due process rights were violated during the proceedings. *See* Respondent's Brief at 5-24.

Initially, we point out that the respondent's application for withholding of removal was filed with the Immigration Court during her proceedings, well after May 2005 (Exh. 5). As a result, her application is subject to the provisions of the REAL ID Act. The REAL ID has amended the Act to allow an Immigration Judge to "base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness' account, the consistency between the applicant's or witness' written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency,

---

[2] The record reflects that the respondent's son is still serving his prison sentence for his 2007 conspiracy conviction based upon his and his mother's criminal fraudulent activities.

inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *See* section 208(b)(1)(B)(iii) of the Act, as amended; *see also Matter of J-Y-C-*, 24 I&N Dec. 260 (BIA 2007) (the Immigration Judge properly considered the "totality of the circumstances" in finding that the respondent lacked credibility based on his demeanor, his implausible testimony, the lack of corroborating evidence, and his inconsistent statements, some of which did not relate to the heart of his claim).

In this case, the Immigration Judge relied in part upon the inconsistencies found between the respondent's testimony and that of her husband as to whether the PKK in Turkey had actually threatened the respondent (I.J. at 13). The record reflects that the respondent indicated that she was forced to flee Turkey when she was "harassed, arrested, detained, and threatened with violence for aiding my Kurdish people in my line of duty as a doctor" (I.J. at 13; Exh. 5). However, according to the respondent's husband's testimony, they left Turkey and went to Japan because they did not like Turkey and were not "feeling well" there (Tr. at 106-107). The respondent's husband makes no mention of the PKK or the respondent's claims to harassment, arrest, detention or threats (I.J. at 13). The Immigration Judge also cites to other inconsistencies between the respondent's claims and the evidence from her brother-in-law and inconsistencies between the evidence from her brother-in-law and the testimony from the expert witness as noted in his decision (I.J. at 12-15). Under these circumstances, we find that, in making his adverse credibility determination under the REAL ID Act, the Immigration Judge did not commit clear error.[3] *See Lin v. Mukasey*, 521 F.3d 22 (1st Cir. 2008) (upholding post-REAL ID Act adverse credibility determination relying on inconsistencies regarding when alien stopped working and his practice of Falun Gong in United States and rejecting alien's argument that these inconsistencies were "too minor").

Moreover, despite the respondent's contentions on appeal, we cannot find that the Immigration Judge erred in denying her application for a waiver under section 209(c) of the Act in his discretion (I.J. at 15-16). The record reflects that the Immigration Judge carefully weighed the respondent's negative factors against those positive factors found in her case and could not conclude, in the end, that such favorable factors outweighed the negative factors surrounding her continuing criminal activities (I.J. at 15-16). *See, e.g., Matter of Jean*, 23 I&N Dec. 373 (A.G. 2002) (Immigration Judge must balance the criminal conduct against equities and hardships). While noting that he found this case to be a relatively close call, the Immigration Judge did not err in not granting the respondent's application inasmuch as he properly considered all of the relevant factors (I.J. at 15-16). Finally, the respondent has failed to sustain her burden in establishing that she was deprived due process because her attorney was not permitted time to present a closing argument on her behalf inasmuch as she has failed to indicate any specific prejudice resulting from such denial. *See, e.g., Gilaj v. Gonzales*, 408 F.3d 275 (6th Cir. 2005) (denial of opportunity to give closing argument is not a violation of due process where the alien has failed to identify specific prejudice resulting from denial of the opportunity to present argument).

---

[3] Because we find no reason to disturb the Immigration Judge's denial of the respondent's application for withholding of removal under the Act and the Convention Against Torture based upon his adverse credibility determination, we find it unnecessary to address the Immigration Judge's "particularly serious crime" finding inasmuch as it would not affect the outcome of these proceedings (I.J. at 11-12).

Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.

FOR THE BOARD

Home PACER Opinions Help

# General Docket
## US Court of Appeals for the Second Circuit

Second Circuit Court of Appeals

INDIV

OPEN

Court of Appeals Docket #: 08-3014-ag
Nsuit :

Yalincak v. Mukasey Filed 6/18/08

Appeal from: Immigration & Naturalization Service

Case type information:

Agency

Petition for Review

None

Docket apparently not updated. I will forward you & Bernie a copy once it is on line.

Lower court information:

District: A73-393-720

Trial Judge:

MagJudge:

Date Filed:

Date order/judgement:

Date NOA filed: 6/18/2008

Fee status: Paid

Panel Assignment:

Panel:

Date of decision:

Prior cases: NONE

Current cases NONE

Official Caption 1/

INDIV

OPEN

---

Docket No. [s] : 08-3014 -ag

Ayfer Yalincak,

Petitioner,

v.

Michael B Mukasey, United States Attorney General,

Respondent.

-------------------------------------

Authorized Abbreviated Caption 2/

-------------------------------------

Docket No. [s] : 08-3014 -ag

Yalincak v. Mukasey

-------------------------------------

-------------------------------------------------------
----------------

1/ Fed. R. App. P. Rule 12 [a] and 32 [a].
2/ For use on correspondence and motions only.

Docket as of July 21, 2008 9:19 pm Page 2

INDIV

OPEN

| | |
|---|---|
| Michael B Mukasey<br>Respondent | Daniel Lonergan Esq.<br>[ ret ]<br>U.S. Dept. of Justice, Civil Division, OIL<br>P.O. Box 878, Ben Franklin<br>Washington , DC , 20044<br>202-616-4213 |
| Ayfer Yalincak<br>Petitioner | Edwin T. Gania Esq.<br>[ LD ret ]<br>Mark Jacob Thomas & Associates<br>11 S. LaSalle St.<br>Chicago , IL , 60603<br>312-236-3163 |
| Michael B Mukasey<br>Respondent | Lisa M. Arnold Esq.<br>[ LD ret ]<br>U.S. Department of Justice - Office of Immigration<br>Ben Franklin Station P.O. Box<br>Washington , DC , 20044 |

202-616-9113

Docket as of July 21, 2008 9:19 pm Page 3

INDIV

OPEN

6/18/08 Case Docketed: Petition for review of agency order on behalf of PETITIONER Ayfer Yalincak, filed. [Entry date Jun 22 2008 ] [DB]

6/18/08 Copy of agency decision and order filed. [Entry date Jun 22 2008 ] [DB]

6/18/08 Copy of receipt re: payment of docketing fee filed on behalf of PETITIONER Ayfer Yalincak, . RECEIPT # 193749 [Entry date Jun 22 2008 ] [DB]

6/20/08 Served copy of petition under cover letter on respondent. [Entry date Jun 22 2008 ] [DB]

6/30/08 PETITIONER Ayfer Yalincak, Form C/A filed, with proof of service. [Entry date Jul 15 2008 ] [DB]

7/1/08 Notice of appeal acknowledgment letter from Daniel Lonergan received. [Entry date Jul 7 2008 ] [GW]

7/15/08 Administrative record on appeal requested. Record Due: 08/13/08. [Entry date Jul 15 2008 ] [DB]

7/15/08 Petitioner Ayfer Yalincak motion stay of deportation/removal filed with proof of service. [Entry date Jul 17 2008 ] [DB]

Docket as of July 21, 2008 9:19 pm Page 4

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/22/2008 18:15:53 | | | |
| PACER Login: | mt0543 | Client Code: | |
| Description: | dkt report | Case Number: | 08-3014 |
| Billable Pages: | 3 | Cost: | 0.24 |

Edwin T. Gania
Mark Jacob Thomas & Associates
11 S. LaSalle Street
Suite 2800
Chicago, IL 60603
(312) 236-3163

DETAINED

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

In the Matter of:

YALINCAK, Ayfer

In removal proceedings
Hartford, Connecticut

File No.: A73-393-720

**MOTION TO RECONSIDER**

Ex. E Part 1

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| AYFER YALINCAK | ) | In Removal Proceedings |
| A73 393 720 | ) | |
| | ) | |
| Respondent. | ) | |

**MOTION TO RECONSIDER**

The respondent, Ayfer Yalincak, through undersigned counsel, respectfully submits this Motion to Reconsider to address errors of fact and law in the BIA's May 22, 2008 decision, and in support thereof states as follows:

PRELIMINARY STATEMENT

1. The BIA decision must be reversed as it is infected with the same factual errors as the Immigration Judge decision and ignores in its entirety, the record of the respondent's April 4, 1998 proceedings, when she was granted asylum, in considering respondent's applications for relief: waiver under Section 209(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1159(c); withholding of removal under Section 241(b)(3) of the Act; and withholding of removal under the convention Against Torture ("CAT"), 8 C.F.R. § § 1208.16-18 (2008).

2. The BIA decision must be reversed as it applied an incorrect legal standard as set forth in the Matter of Jean, 23 I&N Dec. 373

(A.G. 2002) balancing test, and failed absolutely to consider the third factor, public interest. Additionally, the BIA decision is further legally flawed as it fails to accord family unity due weight in the balancing test, or provide guidance because as the record reflects the Immigration Judge did not know what weight it should be given. Also, the Immigration Judge did not allow undersigned counsel to present evidence regarding respondent's March 19, 2007 conviction so the Court could take the "nature of the offense" into consideration as contemplated by the Matter of Jean, supra. Accordingly, respondent's instant motion should be granted and her application for a Section 209(c) waiver granted.

3. The BIA decision relying on an adverse credibility determination (BIA Dec. at 3, n.3) to leave undisturbed the Immigration Judge's decision with respect to respondent's application for withholding of removal was clearly erroneous and contrary to law.

4. The BIA decision denying respondent's application for withholding of removal under Section 241(b)(3) of the Act was clearly erroneous and contrary to law, given the fact that respondent was previously granted asylum on April 4, 1998, and therefore, had conclusively established past persecution. The BIA decision treats the previous grant of asylum as meaningless or a nullity. Such a holding is clearly contrary to law and it impermissibly relitigates the 1998 grant of asylum.

5. The respondent was denied her due process rights when the Immigration Judge failed to provide an opportunity for closing arguments. Respondent in her brief pointed to numerous errors of fact and law, and the BIA decision provides no rational explanation and

contains only conclusory statements, which are not supported by the record. Therefore, it was improper for the BIA to state that there was no prejudice demonstrated.

6. The BIA decision is replete with conclusory statements, or summary, provides little or no explanation, or response, to many of the factual and legal arguments raised by respondent, and requires conjecture, speculation, and imagination to fill the void, as discussed below, and therefore, is contrary to law, and arbitrary and capricious. A majority of the factual and legal issues raised by the respondent are simply left unanswered, as if the BIA never properly considered respondent's extensive brief (hereinafter "Resp. Brief").

7. For all the foregoing reasons, as well as the reasons stated below, the respondent's Motion to Reconsider should be granted.

ARGUMENT

A. <u>Section 209(c) Waiver</u>

8. The BIA decision summarily concludes "despite the respondent's contentions on appeal, we cannot find that the Immigration Judge erred in denying her application for a waiver under section 209(c) of the Act ... The record reflects that the Immigration Judge carefully weighed respondent's negative factors against those factors found in her case and could not conclude, in the end, that such favorable factors outweighed the negative factors..." (BIA dec. at 3). In the instant case, as discussed below, the BIA decision requires conjecture and speculation to support such a finding.

9. It is well established, and the BIA has repeatedly been admonished by the Circuit Court of Appeals, that "[a]n abuse of discretion may be found in those circumstances where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary and capricious manner." Ke Zhen Zhao v. U.S. Dep't of Justice, 265 F.3d 83, 93 (2d Cir. 2001) (internal citations omitted). Further, "federal courts have enforced extensive limitations on an Immigration Judge's exercise of discretion in the context of asylum-eligible refugees." Huang v. I.N.S., 436 F.3d 97 (2d Cir. 2006)(collecting cases); and Matter of Chen, 20 I&N Dec. 16, 19 (BIA 1989)("as with any case involving the exercise discretion, all other factors ... should be considered, with recognition of the special considerations present in asylum (emphasis added). Here, the respondent is, in fact, already an asylee, and has three relatives who are derivative asylees. It is abundantly clear that the Board decision gives no weight, whatsoever, to her status in this country as an asylee.

10. In the respondent's case, the adverse factors insufficient as a matter of law to warrant a discretionary for the waiver under Section 209(c) of the Act. Additionally, both the Immigration Judge and the BIA inexplicably departs from established policies and precedents discussed below, and detailed in the Resp. Brief at pp. 5-14.

11. The BIA decision is devoid of explanation as to how and why the September 22, 1995 conviction was properly considered in the

Matter of Jean, 23 I & N 373, 383 (A.G. 2002) balancing test. Under Matter of Jean, the A.G. held that, "[A]n administrative evaluations of requests for waivers of inadmissibility under the INA Section 209(c)...must consider the nature of the criminal offense that rendered an alien inadmissible in the first place." Id. The balancing test by the IJ should, therefore, have been confined to the March 19, 2007 conviction -- the conviction that has rendered the alien inadmissible --against the factors enumerated in Section 209(c), "humanitarian reasons, to assure family unity, or when it is otherwise in the public interest." Id. The Immigration Judge and the BIA both erred as a matter of law in considering respondent's September 22, 1995 licensing violation.

12. Moreover, two previous Immigration Judges (IJ Carlos Cuevas, Chicago, Illinois and IJ William P. Joyce, Hartford, Connecticut) previously found that the September 22, 1995 licensing violation was not even a crime involving moral turpitude under Section 241(a)(2)(A)(i) of the Act but rather a licensing violation. However, Immigration Judge Straus during the January 16, 2008 hearing, repeatedly, emphasized "I mean they could have charged her with fraud." (Tr. at 178). Such a finding of "fact" and injection of speculation by the Immigration Judge should not have been permitted. Accordingly, respondent's September 22, 1995 licensing conviction should not have been considered in the balancing test along with the Immigration Judge's impermissible speculation injected into the test.

13. Similarly, the Immigration Judge erred in failing to consider "the nature of the criminal offense" -- the March 19, 2007 conviction -- that rendered respondent inadmissible. (Resp. Brief at pp. 5-14).

Similarly, the BIA decision provides no rational explanation for the deviation from the well established case law cited above, and is instead, a conclusory summary statement. Ke Zhen Zhao, supra at 265 F.3d 93; Steinhouse, supra at 247 F.Supp.2d 210; Yousefi, supra at 260 F.3d 330. In the instant case at bar, the Immigration Judge refused undersigned counsel's offers of the Presentence Report, which stated that the respondent only played between a "minimal to minor role" in the conspiracy under United States Sentencing Guidelines § 3B1.2, and counsel's offer to provide portions of the transcripts relating to her March 19, 2007 conviction (Tr. at 185-186). Instead, the Immigration Judge reached his own conclusion and stated "[s]he essentially blamed the other people." (Immigration Judge at 4). However, if counsel had been permitted to present the circumstances and nature of the offense as contemplated by Matter of Jean, the Immigration Judge would have learned that there are at least four other individuals under federal criminal investigation; that the respondent's son had fully cooperated with the Government's investigation and earned a U.S.S.G. § 5K1.1 (substantial assistance motion); and that the sentencing court found by clear and convincing evidence that respondent received little or no benefit from the offense and played only between a minimal and minor role. Because the Immigration Judge and the BIA decision failed to properly take the "nature of the criminal offense that rendered" respondent inadmissible under Matter of Jean, supra at 383, into account in the balancing test, the BIA decision constitutes an "unjustified deviation from the standard applied in prior BIA cases". and was "arbitrary and capricious." Steinhouse, supra; Yousefi, supra; Ke Zhen Zhao, supra. Moreover, a "failure to properly balance by

itself justifies a vacatur of the Immigration Judge's denial and a remand for a proper balancing of the equities." Huang v. I.N.S., 436 F.3d 89, 99 (2d Cir. 2006) (citing cases).

The facts underlying respondent's March 19, 2007 conviction, as agreed to by the sentencing Court, the Government, and the respondent, are summarized in her July 13, 2006 Petition to Enter A Plea of Guilty Pursuant to Fed.R.Crim.P. 10 and 11. A copy of this document is attached hereto as Exhibit A. This documentary evidence would have served a better purpose for an analysis of the "nature of the offense" of respondent's March 19, 2007 conviction, instead of reliance by the Immigration Judge and the BIA on the indictment (Exh. 4), which the respondent never pleaded guilty to as discussed infra.

14. Additionally, the Immigration Judge was seemingly unfamiliar with interpreting a federal criminal statute or federal sentencing procedures. For example, at the September 27, 2007 hearing, the Immigration Judge demonstrated his unfamiliarity with federal criminal laws stating that "a conspiracy is a conspiracy". (Tr. at 5). Moreover, as noted in the Immigration Judge's decision, he looked at the wrong criminal statute, namely, 18 U.S.C. § 1343 (wire fraud), instead of her offense of conviction, 18 U.S.C. § 371 (conspiracy). The BIA decision fails to provide a rational explanation for such clear errors and inexplicably departs from established policies, and is therefore, contrary to law and a remand is necessary for a proper consideration of the "nature of the criminal offense" as contemplated by Matter of Jean, supra. Respondent did not plead guilty to the indictment as written (Exh. 4), but rather a plea agreement, with the stipulation that the sentencing court would determine her criminal

culpability, her role in the offense and sentence to be imposed. A copy of the Affidavit of Bernard Grossberg, Esq., is attached hereto as Exhibit B.

15. Additionally, contrary to the BIA decision, the Immigration Judge was seemingly unfamiliar with what weight to give to family unity because the respondent's daughter, husband, and son are all derivative asylees, "[i]t is quite unclear how that affects the Court's analysis because she does not have status in the United States except as an asylee." (I.J. Dec. at 17). It is absolutely clear that family unity is the most important factor of those enumerated in Section 209(c). See Casem v. I.N.S., 8 F.3d 700, 703 (9th Cir. 1993)(noting the special regard that Congress has for keeping families intact). Because the BIA decision entirely failed to address this aspect of the problem, it was arbitrary, capricious, and manifestly contrary to the statute. An agency decision "would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider [or has] entirely failed to consider an important aspect of the problem." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Therefore, a remand is necessary for the Immigration Judge to give proper weight, with instructions, on the family unity issue.

16. Finally, contrary to the BIA decision, the Immigration Judge gave no consideration, whatsoever, to the public interest factor (Resp. Brief at pp. 13-14). As noted, during the hearing, respondent and her son have paid more than $1 million out of pocket as restitution (Exh. 8). Moreover, both the respondent and her son have been actively participating, through civil litigation while

incarcerated, to collect funds to pay the restitution. See e.g., Yalincak v. Sherman, et al., Case No. 3:07-CV-00170 (AHN)(settled); Yalincak v. Meehan., Case No. 3:07-CV-00168 (MRK)(settled); Yalincak et al v. Barack et al., Case No. 3:07-CV-00311 (AVC). If respondent and her son are deported, it will cause irreparable harm to the investors -- it will cost them million of dollars. In addition, the respondent's character witness testified at length about the prospects for the respondent and her efforts to make restitution. (Tr. at 112-133). Additionally, the respondent submitted an affidavit with her exhibits, from an investor named Louise Totillo who is owed restitution, urging ICE not to deport respondent (Exh. 5 and 6). However, there is no mention of this affidavit anywhere in the record. Because it is clear that the BIA and the Immigration Judge failed to give this crucial piece of evidence any weight, the BIA decisions contention that the IJ "carefully weighed" the factors in the respondent's case is clearly erroneous and without merit.

17. Because there is no mention of the Totillo affidavit in Immigration Judge's analysis, no mention of this at all in the BIA decision, it requires conjecture and speculation to accept as true the BIA decision that the Immigration Judge "carefully weighed" all the factors. As the BIA has repeatedly been admonished, such conclusory statements evidence arbitrary and capricious conduct. Ke Zhen Zhao, supra at 265 F.3d 93. Moreover, a failure to consider an important aspect of the problem constitutes arbitrary and capricious conduct. Motor Vehicle Mfrs. Ass'n, supra at 463 U.S. 29, 43.

18. For all the foregoing reasons, the respondent's Motion to Reconsider must be granted, and the application for a waiver under

Section 209(c) of the Act must be remanded to the Immigration Judge for a proper consideration of the factors enumerated under the Matter of Jean, supra, balancing test.

B. Withholding of Removal Under Section 241(b)(3) of the Act

19. At the outset, the BIA decision is clearly erroneous as it gives the respondent's previous grant of asylum no weight. There is no evidence in the Immigration Judge's decision or the BIA's decision that reflects any weight given to her previous grant of asylum. As a result, it has left a void, which was filled with impermissible conjecture and speculation by the Immigration Judge and now the BIA decision, which contradict the previous finding of persecution by Immigration Judge Joyce on April 4, 1998. Moreover, the law-of-the-case doctrine should have barred re-litigation of the respondent's past grant of asylum, and thus past persecution, since that was not in dispute by the Department of Homeland Security.

20. Notwithstanding the BIA decision relying on the "provisions of the REAL ID Act" (BIA Dec. at 2), the small and irrelevant inconsistencies relied on by the Immigration Judge do not go to the heart of respondent's withholding of removal application and should not have been used to discount respondent's claims. Indeed, there is absolutely no evidence that the Immigration Judge or the BIA decision has even considered the "totality of the circumstances" mentioned in the BIA decision (BIA Dec. at 3). Additionally, the BIA decision points out that respondent's "application for withholding of removal was filed ... well after May 2005" (BIA Dec. at 2) to support its REAL

ID Act arguments; however, so was the case law cited by the respondent, which held that insignificant inconsistencies, which do not go to the heart of the applicant's claims are not sufficient as the sole basis of denial of withholding of removal, but rather matters collateral or ancillary to the claims. Secaida-Rosales v. I.N.S., 331 F.3d 297, 308 (2d Cir. 2003). Zhong v. U.S.D.O.J., 480 F.3d 104, 127 (2d Cir. 2007); Borovikova v. U.S. Dep't of Justice, 435 F.3d 151, 167 (2d Cir. 2006). By summarily citing the REAL ID Act, as its exclusive authority, the BIA decision fails to address the problems raised in respondent's Brief, fails to identify whether any of the Immigration Judge's factual determinations, when considered together with the 1998 proceedings, are supported by the substantial evidence standard. See Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir. 2004). Moreover, when the BIA has "relied primarily on credibility grounds" it "must give specific cogent reasons for rejecting the Petitioner's testimony, and we will reverse where the adverse credibility determination is based upon speculation or upon an incorrect analysis of the testimony." Id at 178 (citing Aquilera-Cota v. INS, 914 F.2d 1375, 1381 (9th Cir. 1990)). Here, all of the factual and legal arguments raised by the respondent have been glossed over in the BIA's decision, leaving conjecture and speculation to fill the void. Since the BIA decision failed to consider an important aspect of the problem, its decision is arbitrary and capricious. See Motor Vehicle Mfrs. Assn, supra at 463 U.S. 29, 43.

21. Additionally, the BIA decision re-emphasizes the respondent's husband's testimony. However, it is well established that "unclear testimony may not serve as substantial evidence for an adverse

credibility finding." Guo v. Ashcroft, 361 F.3d 1194, 1200 (9th Cir. 2004). The respondent's husband does not speak English well. In fact, at times he could not answer the simplest of questions, such as his occupation, or what year he arrived in the United States (Tr. at p. 141). Finally, the BIA decision faults respondent's husband for not saying the acronym "PKK". However, in Turkish it is not called the "PKK", and the respondent's husband does mention "[t]hey shot my sister husband and then a lot of trouble you know." (Tr. at 166). The BIA decision is void of any explanation or reasoning and must be remanded as it would be a terrible miscarriage of justice to deport a family of four, who have resided in this country on asylum for almost 16 years. As the respondent's husband testified, "getting worse, getting worse. One time we decided to go. And then which country? And then we talked." (Tr. at 166). Finally, as respondent's husband testified he is 60% deaf (Tr. at 141-142), and most of his testimony was unintelligible, the select portions relied upon by the BIA decision must be taken in its context of events that happened more than 20 years ago. Guo, supra at 361 F.3d 1200.

22. In light of the foregoing, and the arguments raised by respondent in her Brief (pp. 15-21), which have been left unanswered, the respondent's Motion should be granted.

C. Withholding of Removal Under CAT

23. The BIA decision ignores the admonishment of the Second Circuit in Ramsameachire v. Ashcroft, 357 F.3d 169, 185 (2d Cir. 2004), which stated "an adverse credibility determination ...should

not necessarily affect the BIA's consideration of the alien's CAT claims." Id. And, "[a]n adverse credibility determination, therefore, ...may not be a particularly significant aspect of the CAT inquiry." Id. Here, the BIA decision ignores this admonishment from the Second Circuit Court of Appeals and instead also argues that the "particularly serious crime" finding need not be disturbed, because the "adverse credibility determination" bars the respondent relief under the CAT (BIA Dec. at 3, n.3). Such a conclusion is clearly erroneous and contrary to law and ignores the substantial evidence proffered by respondent's expert witness that it was possible that she may be killed. (Tr. at 91-107). This conclusion, alone, justifies granting the respondent's Motion to Reconsider as the BIA's application of the law was clearly erroneous.

24. Where an agency has failed to consider an important aspect of the problem it has acted arbitrarily and capriciously. Yousefi, supra at 260 F.3d 329-330; see also Motor Vehicle Mfrs. Ass'n, supra at 463 U.S. 29, 43. On the face of the BIA decision, it is abundantly clear that it has failed to take into account the respondent's previous grant of asylum, or considered any of the arguments -- or even read some of the case law cited by respondent -- in rendering its decision. Otherwise, it would have understood that an adverse credibility determination may not influence the Court's CAT review. See Ramsameachire, supra at 357 F.3d 178, (Resp. Brief, at pp. 22-23).

D. Due Process

25. The Board decision stating that respondent has failed to "indicate any specific prejudice" as a result of the Immigration Judge's failure to permit closing argument is clearly erroneous. In fact, the respondent showed that under the Matter of Jean analysis, the Immigration Judge erred as discussed in Part A supra (Resp. Brief at pp. 5-14); failed to address the numerous errors with respect to the respondent's application for withholding of removal under the INA as discussed in Part B supra (Resp. Brief at pp. 14-16); and failed to address the numerous errors, and the BIA has injected new legal errors, in respondent's application for withholding of removal under the Convention Against Torture, as discussed in Part C supra (Resp. Brief at pp. 17-23).

26. A reading of the BIA decision, as it stands now, requires speculation, conjecture, and imagination to fill the void with respect to the numerous legal and factual arguments raised in respondent's case. This is a case where due to the BIA's failure to address the important aspects of the problem, as highlighted by respondent, it has abused its discretion and reached a result(s) contrary to law, and made errors for which it has repeatedly been admonished by the various Courts of Appeals. See e.g., Part C, supra.

CONCLUSION

27. The respondent's instant Motion in light of the record, the arguments raised in the respondent's Brief (pp. 5-24), as well as the attachments hereto, should be granted, and respondent's application for relief under Section 209(c) of the should be granted; the

respondent's conviction should not be considered a "particularly serious crime," and if not, respondent is eligible for withholding of removal pursuant to Section 241(b)(3) of the INA since the respondent has, in fact, demonstrated under the relevant legal standard either past persecution (as evidenced by her asylee status in this country), or a likelihood of future persecution. In the alternative, the respondent should be granted withholding of removal under Article 3 of CAT as the BIA applied an incorrect legal standard and ignored the uncontroverted testimony of her expert witness.

28. Further, the respondent respectfully requests that a different Board member consider the instant motion in light of the numerous legal and factual errors identified in the respondent's Brief (Resp. Brief at pp. 5-24), and in the instant Motion.

Respectfully submitted,

Edwin T. Gania

Edwin T. Gania
Attorney for respondent

Mark Jacob Thomas & Associates
11 S. LaSalle Street
Suite 2800
Chicago, IL 60603
(312) 236-3163

CERTIFICATE OF SERVICE

I, Edwin Gania, an Attorney, certify that I caused a copy of the enclosed documents to be served by placing a true and correct copy for overnight delivery with Federal Express addressed to:

U.S. Department of Homeland Security
Office of the District Counsel
Immigration and Customs Enforcement
450 Main Street, Room 483
Hartford, CT 06103

on this 20th day of June, 2008.

Edwin T. Gania
Edwin T. Gania

COMMUNITY HEALTH ASSOCIATES

54 South Main Street, Newtown, Connecticut 06470
Tel: (203) 270-1077 Fax: (203) 270-0420

October 27, 2005

US District Court
District of Connecticut
Richard C. Lee US Court House
141 Church Street
New Haven, CT. 06510

Ref: 3:05-cr-00153-JBA-2, Ayfer Yalincak

Dear Honorable Judge Janet Bond Arterton,

My name is Jeffrey Friedman, M.D. I am the Medical Director for the Community Health Associates. I was Mrs. Ayfer Yalincak's primary care physician along with Dr. Michael Taweh and Lisa N. Haut, A.P.R.N. from summer of 2000 to summer of 2004. Mrs. Yalincak was under my care for insulin dependant diabetes, unstable angina, and heart disease. Mrs. Yalincak was being treated with 70/30 Humulin Insulin, nitroglycerin for her unstable angina, Lipitor for her high cholesterol and Fuorosemide for the swelling in her legs. In October of 2001, she suffered a stroke and in July 2002, she underwent a hysterectomy at Danbury Hospital. Mrs Yalincak's medical condition was frequently unstable and she frequented the Danbury Hospital Emergency room many times. It is my medical opinion that given her past history she needs careful medical monitoring and care.

If I may be of further assistance please feel free to contact me.

Sincerely,

Jeffrey Friedman, M.D.

Cc:

Ayfer Yalincak
Robert Byers, Esq.
Omer Yalincak

EXHIBIT E Part 2

Generations
Family Health Center, Inc.

February 1, 2007

RE: Ayfer Yalincak
DOB: 7/15/54

To whom it may concern,

Ms. Yalincak has multiple serious chronic medical problems. Her medical conditions include Diabetes, Hypertension, Hyperlipidemia. Congestive Heart Failure, Depression, Heart Murmur and History of Myocardial Infarctions (one in 2003 and one in 2005). Ayfer has also been referred to a Pulmonary Specialist related to 2 Nodules in the left lower lobe of the left lung found on CT scan. The Etiology of these nodes is unknown. Ms. Yalincak has recently complained of abdominal discomfort. She was seen at the Hartford Emergency Room where and had a MRI done as well as a CAT scan of the abdomen which showed a stable indeterminate hepatic mass. We are referring her to a GI Specialist for evaluation.
If I can be of any further assistance please feel free to contact me.

Sincerely,

Scott M. Credit, APRN

Keeping Families Healthy Throughout Generations

1315 Main Street • Willimantic, CT 06226 • Phone 860.450.7471 • [illegible]
[illegible] • Danielson, CT 06239 • Phone [illegible]
[illegible] Washington Street • Suite [illegible] • Norwich, CT 06360 • Phone [illegible]
[illegible] • Suite 2 • Brooklyn, CT 06234 • Phone [illegible]
www.genhealth.org

WCMH/HATCH WING
112 MANSFIELD AVENUE
WILLIMANTIC, CT 06226
TELEPHONE (860) 456-7279
FAX (860) 450-0269

*Robert J. Bundy, M.D., L.L.C.*

BOARD CERTIFICATION
PULMONARY/CRITICAL CARE/SLEEP MEDICINE

January 24, 2007

Re:Ayfer Yalincak (DOB-7-15-54)
216 Eastford Rd PO Box 126
Eastford, Ct. 06242

To Whom It May Concern:

Ms Yalincak was seen in my office on 1/22/07 for consultation and evaluation for a lung nodule and a question of lung cancer. She was also evaluated for dyspnea and shortness Of breath. She is to be seen in follow up on 5/1/7/07 and will be scheduled for testing in 4 months for pulmonary function testing and a repeat Chest Cat Scan.

If you require additional information, please contact the undersigned. Thank you.

Respectfully,

Robert J. Bundy, M.D.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| AYFER YALINCAK, | ) | |
| Petitioner, | ) | |
| v. | ) | File No. 08-3014 |
| MICHAEL MUKASEY, U.S. Attorney General, | ) | A# 73-393-720 |
| Respondent. | ) | |

**EMERGENCY MOTION TO STAY REMOVAL PENDING REVIEW**

Pursuant to Rule 18 of the Federal Rules of Appellate Procedure (hereinafter "FRAP"), the Petitioner Ayfer Yalincak (the "Petitioner" or "Mrs. Yalincak"), by and through her undersigned counsel, respectfully, moves this Court pursuant to FRAP 18(a)(2) and FRAP 27(c) on an emergency basis to issue a temporary stay of removal in the above-captioned matter prohibiting the Respondent from removing the Petitioner from the United States pending resolution of her Petition for Review.

In support of her motion, the Petitioner respectfully states the following:

## I. STATEMENT OF FACTS

A. Prior Proceedings

Petitioner is a married female, native and citizen of Turkey, who was admitted to the United States on or about May 4, 1992, as a nonimmigrant visitor.

On September 22, 1995, the Petitioner was convicted of practicing medicine without a license in the State of Indiana she was sentenced to two years imprisonment and execution suspended after two

years (IJ at 3). On September 12, 1996, the Petitioner was placed into deportation proceedings, with the issuance of an Order to Show Cause. On May 28, 1997, Immigration Judge ("IJ") Carlos Cuevas in Chicago, Illinois issued an order finding that the Petitioner's Indiana conviction did not qualify as a crime involving moral turpitude under Section 241(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), nor as an aggravated felony under INA Section 291(a)(2)(A)(iii). A copy of IJ Cuevas' written order dated May 28, 1997 is attached hereto as Exhibit A.

Subsequently, after a change of venue to Hartford, Connecticut, the Petitioner was granted asylum on or about April 18, 1998, by IJ William Joyce based upon a finding of both past persecution and a well-founded fear of future persecution.

B. Current Proceedings

On March 19, 2007, the Petitioner was sentenced in connection with her July 13, 2006, plea of guilty to one count of conspiracy to commit wire fraud in violation of 18 § U.S.C. 371. The petitioner was sentenced to two years in prison, allowed to self-surrender, and ordered to pay restitution in the amount of $2,250,000.

On July 23, 2007, the, Department of Homeland Security ("DHS") issued a Notice to Appear charging the Petitioner as being removable from the United States under § 237(a)(2)(A)(iii) of the INA as an aggravated felon, as defined in § 101(a)(43)(M) and (U) of the Act, convicted of an offense that involves fraud or deceit in which the loss to the victim exceeds $10,000.

The Petitioner sought relief from removal in the form of adjustment of status under Section 209(c) of the INA, 8 U.S.C. § 1159(C), withholding of removal under Section 241(b)(3) of the INA, and withholding of removal under Article 3 of the Convention Against Torture ("CAT"). On January 16, 2008, at the conclusion of the Petitioner's removal hearing, the Immigration Judge, Michael Straus, Hartford, Connecticut, denied all of Petitioner's applications for relief and ordered the Petitioner

removed to Turkey.

On February 14, 2008, the Petitioner filed a timely Notice of Appeal with the BIA. The Petitioner submitted her brief ("BIA Brief") on April 24, 2008, and on May 22, 2008, the BIA, through a single board member, Frederick Hess, in a short three page unpublished decision dismissed the Petitioner's appeal. (For the convenience of this Court, a copy of the IJ's January 16, 2008 decision is attached hereto as Exhibit B; a copy of the Petitioner's BIA Brief is attached hereto as Exhibit C; and a copy of the BIA Decision is attached hereto as Exhibit D.)

On June 18, 2008, the Petitioner timely filed the instant Petitioner for Review pursuant to 8 U.S.C. § 1252(b)(1), and served the Respondents pursuant to 8 U.S.C. § 1252(b)(3), and FRAP 15. On June 22, 2008, the Petitioner timely filed a motion to reconsider with the BIA. (A copy of Petitioner's Motion to Reconsider is attached hereto as Exhibit E.)

Presently, at the time of this emergency motion, the Petitioner's Motion to Reconsider with the BIA is pending. The Petitioner also moved the DHS to stay the deportation of the Petitioner pending her Petition for Review by this Court. This request is pending with no official notification. On July 10, 2008,respondent's counsel of record, Daniel Lonergan, was contacted to resolve this matter. Mr. Lonergan stated that he would retrieve the file and contact counsel, however, has not yet done so.

For the reasons stated below, the Petitioner's instant motion should be granted during the pendency of her Petition for Review, or at the very least, should be granted until at least both parties can fully brief this Court, as the Respondent will suffer no injury from a stay of deportation, whereas, the Petitioner will be irreparably injured.

## II. ARGUMENT

A. Standard of Review

This Court enunciated the standard applicable for a petitioner seeking a temporary stay pending appeal in Mohammed v. Reno, 309 F.3d 95 (2d Cir. 2002). In Mohammed, this Court stated that four criteria are relevant for a stay of removal pending appeal: "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." Id. at 100.

The Mohammed Court further found that, [i]n the context of a stay of removal of an alien pending appeal ... the gravity of the injury to the alien if a stay is denied, compared to the lesser `injury' to the Government if one alien is permitted to remain while an appeal is decided, suggest that the degree of likelihood of success on appeal need not be set too high." Id. at 102.

B. Mohammed Factors As Applied to Petitioner

1. Merits

As listed in the Petitioner's brief to the BIA, the petitioner advanced four grounds (Exhibit C, pp. 4-5, 5-24). For purposes of this motion, the Petitioner will presume familiarity with the arguments raised therein.

As an initial matter, when the BIA affirms the IJ's decision and closely tracks it, for the sake of completeness this Court will review both the IJ's and the BIA's decisions. Wangchuck v. U.S. Dep't of Homeland Sec., 448 F.3d 524, 528 (2d Cir. 2005).

a. INA 209(c) Waiver, 8 U.S.C. § 1159(c)

The Petitioner contends that both the IJ and the BIA applied the wrong legal standard under Matter of Jean, 23 1 & N Dec. 373, 383 (A.G. 2002) by, amongst other things, considering the Petitioner's 1995 conviction, which had previously been litigated and found not to, be either an

aggravated felony nor a crime of moral turpitude; characterizing the 1995 conviction as a "fraud scheme" (IJ Dec. at 17), contrary to IJ Cuevas and IJ Joyce's past rulings; and failing to consider IJ Joyce's 1998 grant of asylum as establishing past persecution in favor of the Petitioner in the balancing test, and instead, contrary to the law-of-the-case doctrine and collateral estoppel, both the IJ and the BIA relitigated the 1998 grant of asylum, and concluded the Petitioner did not establish past persecution.

As a threshold matter, this Court has repeatedly reaffirmed that it has jurisdiction to review claims that "the agency applied an erroneous legal standard in making a discretionary determination." See Khan v. Gonzales, 995 F.3d 31, 35 (2d Cir. 2007); Barco-Sandoval v. Gonzales, 516 F.3d 35, 41 (2d Cir. 2008). See also Rivas-Gomez v. Gonzales, 441 F.38 1072, 1078-1079 (9th Cir. 2006); Jean v. Gonzales, 452 F.3d 392, 396 (5th Cir. 2006).

What is most disturbing in this case is that the IJ and the BIA's examination of the case at bar, and the well-honed arguments presented in the Petitioner's BIA Brief, and the record, show a disturbing, lack of respect for the Petitioner, applicable legal principles, and a failure to engage in "the type of careful analysis" the Petitioner was due. See Bah v. Mukasey, ___F.3d___, 2008 WL 2357411 at *10 (2d Cir. 2008).

By way of example, during the merits hearing of January 16, 2008, the DHS stated that the Court should re-consider the previous 1995 conviction of the Petitioner and recast it as a "fraudulent scheme", however, immediately before issuing his oral Decision, the IJ acknowledged that under the Matter of Jean, he was only suppose to weigh the conviction which had rendered the alien inadmissible - not the 1995 conviction which was neither an aggravated felony nor a crime involving moral turpitude. The Court stated to counsel:

MR. GANIA TO JUDGE:
But it may be the issue under Matter of Jean though, is to consider the crime that makes her

inadmissible. Because that was neither a CIMT or an ag. fel. She's inadmissible because of this conviction.

MS. FLANEGAN TO JUDGE:
That's true.

MR. GANIA TO JUDGE:
That's what Matter of Jean says.

JUDGE TO MR. GANIA:
Right.

Tr. at pp, 187-188.

Nonetheless, the IJ in his Oral Decision, delivered only a few minutes later, after advising both the DHS and undersigned counsel that the 1995 conviction would not be weighed in the balancing test, stated as follows:

"[T]he Court does find that the respondent has significant equities, in this country ... The Court finds, frankly, that after the respondent was convicted of one fraud scheme, she appeared not to have learned her lesson. She apparently engaged in another serious fraud scheme and she also received jail time."

IJ Dec. at 17.

Apparently, the IJ felt it appropriate to apply a completely different standard to the prejudice of petitioner. Moreover, in considering the INA § 209 waiver, IJ Straus failed to follow the doctrine of collateral estoppel and the law-of the-case doctrine by recasting the 1995 licensing conviction as a "fraud scheme," when, in fact, both IJ Cuevas (Chicago, Illinois) and IJ Joyce (Hartford, Connecticut) both considered the previous conviction and both held that it was neither an aggravated felony nor a crime of moral turpitude, and did not involve fraud.

As this Court has held, the "fundamental notion" of the doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court, of competent jurisdiction in a prior action may not be re-litigated in a subsequent suit between the same parties or

their privies." United States v. Alcan Aluminum Corp., 990 F.2d 711, 718-719 (2d Cir. 1993). This doctrine has long been recognized to apply in immigration proceedings. See Matter of Fedorenko, 19 I. & N. Dec. 57, 61-62 (BIA 1982).

Similarly, the law-of-the-case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent "cogent" and "compelling" reasons such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000); Alie v. Mukasey, ___ F.3d ___, 2008 WL 2437647 (2d Cir. 2008) with respect to both collateral estoppel and the law-of-the-case doctrine, the Petitioner pointed out in her BIA Brief that the IJ impermissibly re-litigated the 1998 grant of asylum, and the facts and circumstances surrounding that decision, and the BIA summarily glossed over the argument. Moreover, both the BIA and the IJ injected their own speculation and conclusions in lieu of previously decided rulings on the same issues.

In the same vein, the IJ Straus and the BIA gave the Petitioner's 1998 grant of asylum no weight whatsoever: it was treated as a nullity, a non-event. In fact, the IJ stated, "[t]he Court in reviewing the regulations finds that there is insufficient evidence to show past persecution." (IJ Dec. at 13-14). Applying the same rules above, the IJ committed legal error. Because, as in asylum cases, "[t]he actual experience of past persecution should also weigh in favor" of a favorable exercise in discretion, See In re Chen, 20 I & N Dec. 16, at 19 (BIA 1989); Huang v. INS, 436 F.3d 89, 99 (2d Cir. 2006); Moreover, "[t]he danger of persecution will outweigh all but the most egregious adverse factors." In re Chen, supra.

Here, the IJ and the BIA simply turned a deaf ear to the Petitioner's past grant of asylum on a credible finding of both past persecution and future persecution by IJ Joyce in 1998. What is even more disturbing is that, the IJ's own conduct and management of the hearing entirely led to this perverse outcome:

JUDGE TO MS. FLANEGAN:
... Now, in terms of her testimony, Ms. Flanegan, is -- I don't. certainly want to be repetitive, especially since she's already testified with the previous immigration judge.

JUDGE TO MS. FLANEGAN:
As I understand it, you said that Judge Joyce found past persecution based on her treatment by the police?

MR. GANIA TO JUDGE;
Yes.

JUDGE TO MR. GANIA:
By the security officials in Turkey?

MR. GANIA TO JUDGE:
That's right.

Tr. at pp. 34-35 (Lines 16-25, and 1-3).

* * *

JUDGE TO MS. FLANEGAN:
...Yeah. I'm just, you know, concerned about the time here, focusing on the issues in this case., And, obviously,.what's going on in Turkey -obviously, this happened 20 years ago, so -- okay.

Tr. at p. 37 (Lines 2-5).

Again, the past grant of asylum in 1998, should have meant something as the IJ implied all throughout the hearing. Yet, instead, he re-litigated the matter, without input from the Petitioner, or counsel, and despite the fact that the Government, the DHS didn't question the basis upon which she was previous granted asylum, or question the fairness of the previous hearing.. Indeed, while advising the Petitioner that the Court will not delve into her past persecution, the Court at the end played a game of "gotcha" and held he could not find sufficient evidence of past persecution. (IJ Dec. at 13).

Accordingly, the IJ impermissibly re-litigated the Petitioner's past, grant of asylum, applied the wrong legal standard, and the BIA decision was thoroughly infected with the same legal errors.

In addition, the IJ repeatedly refused undersigned counsel's efforts to introduce evidence regarding the nature of the offense that has rendered the alien inadmissible in the instant proceedings -- the 2007 .conviction for conspiracy to commit wire fraud -- as contemplated by the Matter of Jean supra. Instead, the IJ reached his own conclusions based on speculation about the nature of the offense, and applied his own interpretation of federal criminal law. As this Court has previously held, this Court "owes no [Chevron] deference to an agency's interpretation of state or federal criminal laws." Michel v. INS, 206 F.3d 253, 262 (2d Cir. 2000). As noted in the Petitioner's BIA Brief, the IJ erred in his legal analysis and application of the law, and the BIA's Decision was infected with the same analysis. (Pet. BIA Brief, at pp. 8-11).

b. Withholding of Removal Under INA 241(b)(3)

The IJ pretermitted the Petitioner's request for Withholding of removal, based on his finding that the Petitioner's 2007 conviction for conspiracy to commit wire fraud constituted a "particularly serious crime." However, in doing so, the IJ did not apply the four factors enumerated under Matter of Frentescu, 18 I & N Dec. 244 (BIA 1982).

Failure to weigh all four Frentescu factors, specifically the fourth factor, "constitutes an unjustified deviation from the standard applied in prior BIA cases." Steinhouse, v. Ashcroft, 247 F.Supp.2d 201, 210 (D.Conn. 2003)(Underhill, J)(citing Yousefi v. INS, 260 F.3d 318, 330 (4th Cir. 2001)); See also Benabdelmoutaleb v. Ashcroft, 2005 U.S. Dist. Lexis 39200 (E.D.N.Y. May 20, 2005). In the instant case, the IJ did not even mention or apply the last two Frentescu factors as applied to the Petitioner. Further, the BIA left the IJ's findings undisturbed because the Petitioner had failed to establish "past persecution,." the alternative ground for denial given by the IJ. (BIA Dec. at p. 3 n.3). Again, for the reasons stated above in part (a), both the IJ and the BIA applied the wrong legal standard, not only to their "particularly serious crime" determination, but also on the alternate ground

of "past persecution."

Namely, because the Petitioner, as evidenced by her past grant of asylum, had experienced actual persecution, under the applicable regulation, was entitled to a rebuttable presumption of future persecution. Melgar de Torres v. Reno, 191 F.3d 307, 311 (2d Cir. 1999); Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir. 2004).

The IJ erroneously applied the wrong legal standard, and as a result of the IJ's conduct and management of the hearing, the Petitioner was deprived of a meaningful opportunity for a fair hearing. At the very least, if the IJ wished to re-litigate the 1998 grant of asylum, he should have said so, so the Petitioner could recount the details of that persecution. Indeed, to advise the Petitioner that he did not want to "re-litigate" because another IJ had found persecution, and then to proceed to find that she had not established "past persecution" goes to the very heart of the integrity of the hearing.

c. Withholding of Removal Under Article 3 of CAT

Similarly, the IJ gave no weight whatsoever to the petitioner's past grant of asylum and based his "more likely , than not analysis" on speculation that the Turkish government would not know that she had. been granted asylum in this country in 1998. Moreover, the IJ and the BIA Decision ignored this Court's admonishment in Ramsameachire, supra at 185, which stated "an adverse credibility determination ... should not necessarily affect the BIA's consideration of the alien's CAT claims." Id. And, "[a]n adverse credibility determination, therefore ... may not be a particularly significant aspect of the CAT inquiry." Id. Here, the Petitioner not only presented her own testimony but also the testimony of an expert witness, which the IJ found credible. Next, the IJ also reviewed the State Department Report on Turkey, which like the expert witnesses testimony stated that torture is rather prevalent in Turkey especially for someone who is publicly known to have sought and received asylum in the U.S. (Tr. at pp. 91-107).

Again, because the IJ and the BIA decision turned a deaf ear to the very regulations that they are required to, implement, their application of the law was in error.

2. Injury to petitioner

As this Court has noted in exclusion proceedings, "[o]rdinarily ... it is deemed that exclusion is irreparable harm, and that the INS suffers no offsetting injury." Ofosu v. McElroy, 98 F.3d 694, 699 (2d Cir. 1996)(citing Michael v. INS, 48 F.3d 657, 664 (2d Cir. 1995)).

Indeed, in addition to the foregoing, the Petitioner has two children, and husband who live in this country, and also, suffers from numerous health problems, including heart disease, insulin dependent diabetes, unstable angina, stroke (2001), two heart attacks (2005-2007), nodules on her lungs and a lesion on her liver. The hardships are decidedly in favor of the Petitioner.

3. Public Interest

As district court, Vanaskie, J., held in Khouzam v. Hogan, 497 F.Supp.2d 615, 627 (E.D.Pa. 2007), "the public interest will be advanced by granting a stay. As noted above, protection against torture is an essential component of the rule of law and a democratic society ... Granting a stay of removal to assure proper observance of the applicable law serves the public interest.." Id.
In the instant case, the Petitioner and her family have lived in this country for almost 17 years.

Moreover, the Petitioner's family members are all derivative asylees, meaning that their status hinges on the Petitioner's status. There is a reasonable probability in this case that without the IJ's errors, which also infected the BIA's Decision, the outcome would have been different. In light of the facts discussed above, it would be a perverse exercise to, first, grant asylum to the Petitioner in 1998, and then in 2008, because a particular immigration judge failed to properly apply legal principles and applicable federal regulations to the case at bar, remove the Petitioner to Turkey, where she has

previously been persecuted, while this Court determines who is right in this controversy.

In effect, absent an emergency stay being granted, the protection afforded under both the INA (i.e., asylum, withholding of removal), and under the Convention Against Torture would not exist for the Petitioner.

## III. CONCLUSION

WHEREFORE, the premises considered, the Petitioner respectfully requests that this Court issue a temporary stay of removal pending the resolution of her presently pending Petition for Review.

Respectfully submitted,

Edwin T. Gania

Edwin T. Gania
Attorney for Petitioner

Mark Jacob Thomas Associates
11 S. LaSalle St., Suite 2800
Chicago, IL 60603
(312) 236-3163
edgania@cs.com

## CERTIFICATE OF SERVICE

I, Edwin T. Gania, certify that I caused a copy of the foregoing petition to be served by placing a true and correct copy of same in the U.S. Mail at 11 S. LaSalle Street in an envelope with proper first class postage affixed addressed to:

Office of Immigration Litigation
Civil Division
Department of Justice
Box 878
Ben Franklin Station
Washington, D.C. 20044

on this 14th day of July, 2008.

Edwin T. Gania
Edwin T. Gania

affidavit

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | } | CR.NO.3:05-CR-00111-JBA-1 |
| v. | } | |
| HAKAN YALINCAK | } | CR.NO.3:05-CR-00153-JBA-1 |

Affidavit of Louise Totillo in Support of Defendant

I, Louise Totillo, do depose and say the following in support of the defendant Hakan Yalincak's Motion for Release Pending sentence, in his efforts to obtain a downward departure at sentencing, and in his pursuit of any benefits or waiver for which he may be eligible under the Immigration and Nationality Act to remain in the United States:

1. I am over the age of 18 and believe in the obligations of an oath.

2. This affidavit is based on my personal knowledge, my review of records, files and agreements regarding the Daedalus Capital Relative Value Fund I, LLC ("the Fund"), managed by Daedalus Capital Partners, LLC, ("DCP"), the representations and transactions contained therein, and consultation with my own counsel, and defendant's counsel, and my recollection and first hand familiarity with the facts.

3. Proximate to the date of March 2005, upon solicitation by Paul Solomon, an insurance salesman, and Hakan Yalincak, a member of DCP, I invested an approximate amount of $148,000 in the Fund.

4. At all times relevant hereto, DCP represented that it consisted of Ralph Hallenborg as CEO, Matthew J. Thomas as president, Michael J. Legamaro as general counsel, and Hakan Yalincak as a member and trader of the Fund.

5. Proximate to the date of May 6, 2005, Hakan Yalincak was arrested in connection with an indictment, CR.NO.3:05-CR-00111-JBA-1.

6. Proximate to the date of May 23, 2005, a creditor of the Fund filed an involuntary petition for relief under chapter 7 of the bankruptcy code in the United States Bankruptcy Court for the SDNY,

affidavit

case no. 05-13790-PCB.

7. Proximate to the date of June 15, 2005, Hakan Yalincak and Ayfer Yalincak were indicted in connection with their involvement in the collapse of the Fund, CR.NO.3:05-CR-00153-JBA-1. I am not one of the investors listed in the indictment and further I have never met Ayfer Yalincak and she has never solicited me for any investments.

8. Proximate to the date of June 15, 2005, Hakan Yalincak and Ayfer Yalincak were indicted in connection with their involvement in the collapse of the Fund, CR.NO.3:05-CR-00153-JBA-1.

9. Proximate to the date of June 23, 2005, an order of relief was entered against the Fund by the Honorable Prudence C. Beatty, United States Bankruptcy Judge.

10. On or about August 4, 2006, I was informed through counsel who had discussed the oresent matter with Mr. Yalincak's counsel and was informed of the following: (i) Mr. Yalincak pled guilty to one count of bank fraud and one count of wire fraud on June 6, 2006; (ii) Mr. Yalincak through defense counsel, has entered into a Forfeiture Agreement dated January 13, 2006, with the government; (iii) Mr. Yalincak has retained bankruptcy counsel, Gerard DiConza, to recover the gift to New York University arranged and negotiated by Michael J. Legamaro; (iv) Mr. Yalincak has commenced litigation to recover funds for and behalf of investors in the Fund pursuant to the terms of the said Forfeiture Agreement; (v) Mr. Yalincak has represented through counsel that upon being released from custody or the conclusion of his incarceration he will fully reimburse -- without limitation -- any funds not recovered by myself, my agents, or representatives in the bankruptcy process.

11. I sincerely ask that this court exercise its discretion and downwardly depart when tailoring a sentence for Mr. Yalincak in light of his efforts and actions and return him home to his family.

12. Further, I sincerely ask that this court release Mr. Yalincak pending sentence on the conditions pursuant to 18 U.S.C. 3143(a)(1) in

affidavit

accordance with 18 U.S.C. 3142(b) or (c) as I do not believe Mr. Yalincak to be a danger to the community or a risk of flight. As a part of his release, I would ask this court require him to seek employment and continue assisting the government and/or the bankruptcy trustee in the recovery of funds.

13. I further state, if this court were to give Mr. Yalincak a lengthy sentence, his efforts to make restitution to me, and follow through on the repayment arrangements he has made with me and other investors, would be greatly curtailed if not, fully negated and would cause me significant hardship and irreparable harm.

14. I further state, that Mr. Yalincak has, on his own volition come forward through counsel to (i) arrange for an agreeable repayment schedule; and, (ii) offered to further assist me in any way upon his release.

15. Further, it has been brought to my attention that Mr. Yalincak as an asylee in the U.S. may face removal proceedings if the Immigration and Customs Enforcement ("ICE") division of DHS chooses to so place him. If ICE were to take such action, it would greatly curtail if not, fully negate Mr. Yalincak's efforts to honor his repayment arrangement, and cause me irreparable harm and significant hardship. I thus ask that the U.S. Attorneys office for the District of Connecticut assist Mr. Yalincak's efforts to remain in the country or in the alternative, I ask that ICE and/or the officer-in-charge of Mr. Yalincak's case, exercise prosecutorial discretion as I will support any relief Mr. Yalincak may pursue under the Immigration and Nationality Act.

16. I ask most sincerely that the foregoing be taken into consideration by this court, the Honorable Janet Bond Arterton.

Under the penalties of perjury,

Louise Totillo

Louise Totillo

Page 3

Wayne Trowbridge

WAYNE TROWBRIDGE
Notary Public
State of Connecticut
My Commission Expires April 30, 2009

Dr. Robert B. McKay
Box 126-216 Eastford Road
Eastford, CT 06242
860-974-0392

Copy
Original mailed
to ICE

June 12, 2008

Immigration and Customs Enforcement
Officer in Charge
450 Main Street
Hartford, CT 06103

Regarding: Home detention of Ayfer Yalincak
File #A73-393-720 (In Removal Proceedings)

Dear Sir:

My name is Robert B. McKay; a family friend of the Yalincaks, previous owner of the Municipal Cafeteria, (485 Main Street, Hartford, Connecticut), Justice of Peace, and I live at the above mentioned address with my wife, Lorraine McKay

Ayfer Yalincak has proven not to be a person at "risk of flight". Prior to her trial she stayed very successfully at our house with an ankle bracelet for eight months.

I am requesting for various humanitarian and health reasons that she again be entrusted to stay at our home under a similar situation at your discretion.

Enclosed please find my:

a. Notarized declaration
b. Brief Resume

I believe United States Probation Officer, Wilfredo Durant, (203-773-2100) would readily confirm the success of past placement of Ayfer Yalincak at our home and our concern for the Court's interests and her well-being.

Cordially,

Robert B. McKay

Enclosure

March 2008

Robert B. McKay, PhD.
robtmckay@msn.com

General Statement

Dr. Robert B. McKay has a strong background in utilizing the media to promote his lifetime activities in education, business and social activism.

In 1990 he organized the first Republic Day celebration (Cumhuriyet Bayrami) at the Connecticut State Capitol to make the leadership and people of Connecticut aware of Turks in Connecticut and the international importance of Turkey. In organizing this year's event for Connecticut leaders, he and the Turkish Community highlighted, for the first time, the problems of mass genocide and international terrorism inflicted upon the people of Azerbaijan. An expert, Tomras Azari, President of the Azerbaijani Association was this year's key speaker.

The program had a media impact through: television coverage, programming, a month long display of approximately 150 feet in the Connecticut State Capitol and internet coverage.

In 2006 Dr. McKay attended the week long seminary sponsored by the President of the Of the University of Istanbul regarding genocide: Istanbul, Turkey.

Education

1972 University of Connecticut, PhD. Higher Education with a minor in Political Science
1965 University of Connecticut, M.S. Administration with Emphasis on Community Organizations and Volunteer Work
1958 University of Connecticut B.S. Education in Science and Vocational Education

Professional Employment

Hale Ray High School-Biology/Science Teacher
Tarsus American College, Tarsus, Turkey-Biology Department Chairman
University of Connecticut, Associate Professor—Cooperative Service-4H Youth and Family Development
Middlesex Community College—Assistant to President
a) Grants Coordinator
b) Organized committee to build new campus

Executive Director, Connecticut Campground Owners Association
a) Registered Lobbyist
b) Editor

Business

Developed three group homes for the retarded in Webster, MA and Danielson, CT
Co-owned Atlantic Modular Homes. Partnered with son to build modular homes and development projects in the towns of Wethersfield, Enfield, Pomfret, Putnam ,

Eastford and Suffield through 1992.
Co-owned Restaurant with family
Real Estate and Real Estate Rental

Presently: Self Employed in Partnerships

1. Working with brother to develop funding of product and procedure to cure ulcerated foot conditions resulting from diabetes.
2. Partner in Euphoria event solutions with son (See: euphoriaevents.com)
3. Seeking partnerships for national Geothermal/Solar company with international possibilities.
4. Real Estate and Real Estate Rental

Civic and Community Organizational Activities have included:

1. Chairman: Citizen Planning Committee which established Quinebaug Valley Community College in Danielson, CT
2. Established and chaired Scholarship Foundation for Quinebaug Valley Community College so that upon day one no student would be denied education due to economic need.
3. Established and chaired volunteer community-based organization to fund and purchase 200 acre 4H outdoor center in Pomfret, CT
4. Chairman of Homeowners Emergency Loan Program (H.E.L.P.) currently funded by the United Way.--We have prevented over 100 families from going into bankruptcy on their homes (Over 35 families/month are facing bankruptcy in Hartford.)
5. Federation of Turkish American Associations, Vice President, and Chairman of International Affairs Committee, Offices at the United Nations Plaza, New York, NY
6. The Turkish Forum Board of Directors. (The Forum is an informational organization reaching about 185,000 people) Kaya Buyukatman, President
7. Turkish American Association of Southern New England Board of Directors
8. Chairman of the yearly Turkish Independence Day Ceremonies held Oct. 29 at the CT State Capitol. Guests have included: Turkish Ambassador H.E. Mehmet Nuri Ezen, Northern Cyprus Turkish Representative to the United Nations H.E. Aytug Plumer, City Councilwoman Veronica Airey-Wilson and State Senator Tony Guglielmo
9. Successfully helped coordinate purchase of Turkish Submarine Murat Reis for use as symbolic sign of Turkish American friendship. Submarine is now a marine museum opposite President Clinton Library in North Little Rock, Arkansas.
10. Isanya Koy, Turkey—Co-chairman of committee that arranged for construction of a village school
11. Twice elected Democratic Candidate, 50th District House of Representatives
12. Justice of Peace-current term ends 2012