UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

FILED
2008 AUG 11 A 11:44
U.S. DISTRICT COURT
NEW HAVEN, CT

| | |
|---|---|
| AYFER YALINCAK,<br>A No. A 73-393-720,<br>Petitioner,<br>v.<br>BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL.,<br>Respondents. | Civil Case No.<br>3:08-cv-01193 (JBA) |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S AMENDED PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241**

Petitioner, Ayfer Yalincak ("Mrs. Yalincak" or "Petitioner"), in support of her Petition for a Writ of Habeas Corpus, respectfully submits this memorandum of law pro se, and after consideration of additional factors to be presented at a hearing before this Court requests her Petition be granted.[1]

In support of her Petition, the Petitioner states as follows:

## I. BRIEF PROCEDURAL BACKGROUND

The Petitioner is a 54 year old native of Turkey who was granted political asylum by Immigration Judge ("IJ") William P. Joyce, Hartford, Connecticut on or about April 4, 1998. (Pet. ¶¶23-24).

1. The Petitioner has retained counsel of Edwin T. Gania, Esq., however, he is presently in the process of locating local counsel for pro hac vice admission. This process has been delayed by the recent unexpected death of local counsel's office partner.

On or about March 19, 2007, the Petitioner was sentenced in the United States District Court for the District of Connecticut in connection with her July 13, 2006 plea of guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §371, to a term of imprisonment of twenty-four (24) months, followed by three (3) years supervised release. The Petitioner received credit for the fourteen (14) months she served in pretrial detention before posting bail, and was ordered to self-surrender on April 24, 2007 to FCI Danbury Low. (Pet. ¶¶29-30).

The Petitioner self-surrendered on April 24, 2007 and completed the sentence on November 9, 2007. (Pet. ¶30). Immediately upon completion of her sentence she was taken into the Respondents' custody and transferred to the Donald W. Wyatt Detention Facility ("Wyatt"). (Pet. ¶¶1, 30).

The Petitioner's immigration proceedings before IJ Michael W. Straus, Hartford, Connecticut began on September 27, 2007, with a master calendar hearing scheduled for November 27, 2007, and a merits hearing scheduled for January 16, 2008. (Pet. ¶¶32-33).

The Petitioner applied for three forms of relief: Waiver under Section 209C9) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. §1159(c); witholding of removal under Section 241(b)(3) of the INA, 8 U.S.C. §1231(b)(3); and under the Convention Against Torture ("CAT"), 8 C.F.R. §§1208.16-.18. (Pet. ¶34).

On January 16, 2008, IJ Straus denied the Petitioner all forms of requested relief and ordered Petitioner removed to Turkey. (Pet. ¶35).

On February 14, 2008, the Petitioner filed a Notice of Appeal with the Board of Immigration Appeals ("BIA"). (Pet. ¶¶36-37). And, on May 22, 2008, the BIA affirmed IJ Straus' order of removal. (Id. ¶38).

On June 18, 2008, the Petitioner timely filed a Petition for Review with The Second Circuit Court of Appeals. Presently, this Petition is pending. (Pet. ¶39).

On June 20, 2008, the Petitioner timely filed a Motion to Reconsider with the BIA. This motion is presently pending. (Pet. ¶40).

On or about July 14, 2008, the Petitioner filed an Emergency Motion to Stay her Removal, with The Second Circuit Court of Appeals. The Petitioner's removal has been stayed, absent objection from Respondent Michael B. Mukasey's counsel in the Petition for Review. (Pet. ¶42). Notwithstanding the stay, the Respondents, specifically, Immigration and Customs Enfrocement ("ICE") and the Department of Homeland Security ("DHS") have, on two occasions, attempted to remove the Petitioner by taking her to the airport, without notice to her counsel or to her family, so they could bring her clothing and/or money.

Upon information and belief, on July 25, 2008, the local ICE and DHS agents in charge of the Petitioner were

informed by Respondent Michael B. Mukasey's counsel in the Petition for Review, that they are not to remove, or attempt to effectuate, the Petitioner's removal from the United States pending resolution of her Petition for Review.

As a result of the stay preventing the Petitioner's removal, the Petitioner's "removal period" as defined by INA §241(a)(1)(B)(ii), 8 U.S.C. §1231(a)(1)(B) has not begun, and the Petitioner has been held in detention by operation of 8 U.S.C. §1226(c) since November 9, 2007.

## II. ARGUMENT

### A. JURISDICTION

First, on a jurisdictional basis this Court has jurisdiction to consider the Petitioner's habeas because it raises constitutional issues, which the BIA cannot address. Fuller v. Gonzales, 3:04CV2039 (SRU), 2005 WL 818614, *2 (D.Conn.)(citing Arango Arandondo v. I.N.S., 13 F.3d 610, 614 (2d Cir. 1994)(BIA does not have authority to adjudicate constitutional issues)).

Next, the REAL ID ACT of 2005, (codified at 8 U.S.C. §1252) does not divest this Court of jurisdiction over this petition. "Although the REAL ID ACT of 2005 eliminated district court jurisdiction over habeas corpus petitions challenging order of removal, district courts retain subject matter jurisdiction over Section 2241 petitions challenging legality of an alien's detention." Martinez v. Gonzales, 504 F.Supp.2d 887, 891-892 (C.D.Cal. August 17, 2007)(internal citations omitted); See also

Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir. 2006) (citing Zadvydas v. Davis, 533 U.S. 678, 687-688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)).

B. **NATURE OF MRS. YALINCAK'S DETENTION**

Section 236(c) states that the "Attorney General shall take into custody any alien who--[among other things,]... (B) is deportable by reason of having committed any offense covered in Section 237(a)(2)(A)(ii), A(iii)..." 8 U.S.C. §1226(c). Section 237(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. §1227(a)(2)(A)(iii). Section 236(c), provides the default rule under which aliens convicted of aggravated felonies are held. However, once an alien is subject to a final order of removal, the statute under which the alien is held changes. Section 241(a) of the INA states "when an alien is ordered removed, the Attorney General shall detain the alien." Therefore, once an alien enters the "removal period," that alien is no longer held under the authority of section 236(c) but rather under the authority of section 241(a).

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

8 U.S.C. §1231(a)(1)(B)(emphasis added).

Accordingly, because Mrs. Yalincak's order is being judicially reviewed, and there is a stay of removal in place, Mrs. Yalincak's removal period has not begun. In sum, Mrs. Yalincak's removal period has never begun and, consequently, Mrs. Yalincak has continued to be detained under Section 236(c), and not under Section 241(a).

C. <u>DUE PROCESS CLAIMS</u>

The Petitioner has been in custody under INA Section 236(c) since November 9, 2007. The question here is, is continued detention under Section 236(c) constitutionally permissable with respect to the Petitioner.

1. <u>Substantive Due Process</u>

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." <u>Reno v. Flores</u>, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). "Freedom from imprisonment -- from government custody, detention or other forms of physical restraint -- lies at the heart of the libterty that Clause protects." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

Nevertheless, the right is not absolute. The Supreme Court has recognized "detention during deportation proceedings as a constitutionally valid aspect of the deportation process." <u>Demore v. Kim</u>, 538 U.S. 510, 523, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

However, Congress' ability to abrogate an alien's right to liberty is not absolute.

Further, "[a]ny congressional limitation on the right must bear at least some relation to a legitimate governmental purpose (to meet substantive due process limitation), and the application of that abrogation must be subject to adequate procedural protection (to meet procedural due process limitations)." Fuller, supra 2005 WL 818614, at *3 (D.Conn.)(Underhill, J.).

Moreover, in Fuller, Judge Underhill noted "that, unlike the detention in Zadvydas, the detention contemplated by Congress under Section 236(c) was not only farm from indefinite, but relatively, short -- on average less than ninety days. The Court did not address the procedural due process question, i.e., whether there were adequate procedures in place for determining whether an alien fell within Section 236(c)'s categorical sweep." Fuller, supra, 2005 WL 818614, at *4 (D.Conn.)(Underhill, J.).

Here, the Petitioner's detention has surpassed at least three (3) times the period of detention authorized by Demore v. Kim, 538 U.S. at 513, 531, 123 S.Ct. 1708 (2003).

While the Respondents have advised the Petitioner, and her counsel, that she is not eligible, at any time, for bail under Section 236(c), the Respondents read 236(c) too broadly.

"[A] careful reading of the Supreme Court's decision [in Demore] reveals it to be not the sweeping pronouncement suggested by Respondents, but rather a narrower holding grounded in repeated reference to the anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course. The emphasis in Demore on the anticipated limited duration of the detention period is unmistakable, and the Court explicitly anchored its holding by noting a 'brief period', Demore, 538 U.S. at 513, 523, 123 S.Ct. 1708... Moreover, in upholding the Constitutionality of §236(c), the Supreme Court specifically referred to statistics demonstrating the typically brief period that pre-final order removal proceedings require and the attendant short periods of detention that are therefore typically imposed. Relying on statistics compiled by the Executive Office of Immigration Review, the Supreme Court noted that in 85% of cases in which aliens were detained pursuant to §236(c), removal proceedings were completed within an average of 47 days, with a median of 30 days. Id. at 529, 123 S.Ct. 1708. Furthermore, the Court noted that even in the remaining 15% of cases...an appeal takes an average of four months..." Madrane v. Hogan, 520 F.Supp.2d 654, 664 (M.D.Penn. 2007).

Additionally, as the Supreme Court noted, an alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention

became unreasonable or unjustified." Demore, 538 U.S. 532, 123 S.Ct. 1708 (Kennedy, J., concurring); Nadarajah v. Gonzales, 443 F.3d 1069, 1081 (9th Cir. 2006).

The Petitioner is in poor health, and is not receiving some of her medication at Wyatt, such as Lipitor, and has been unable to obtain a biopsy in connection with the nodules on her lungs and lesion on her liver. This situation has persisted now for over two years: first, as a result of the criminal proceedings, and second, as a result of the immigration proceedings. As noted in the Petitioner's Petition, she has been hospitalized while detained at the Wyatt facility on several occasions for fluid in her lungs. Significantly, the Petitioner has an undisputed history of appearing for her immigration hearings, and has an undisputed history of appearing for her criminal proceedings. She has never been found to be a poor bail risk, and has consistently adhered to any and all bail conditions when released in the past. (Pet. ¶¶23, 28). In the instant case at bar, the latter has some substantial significance: the Petitioner was admitted to bail pending sentence pursuant to 18 U.S.C. §3143, which unlike 18 U.S.C. §3142 (bail pending trial) requires a showing by clear and convincing evidence that a defendant is not a risk of flight or a danger to the community. Moreover, the Petitioner was also allowed to self-surrender. (Pet. ¶¶29-30).

To the extent the Government argues that, because the Petitioner now faces deportation she is "automatically" a risk of flight, this argument is hollow. All throughout the Petitioner's 1997-1998 immigration proceedings the Petitioner was facing deportation. However, after posting bond in the amount of $5,000.00, she appeared for all of her scheduled hearings over the course of the next year. Similarly, in connection with the 2007 criminal prosecution, the Petitioner was released on bail pending sentence for eight (8) months and given self-surrender. All throughout the criminal proceedings, the Court and the Government explicitly advised the Petitioner of her immigration prospects and, nonetheless, she appeared for all of her scheduled hearings, and self-surrendered knowing full well that it might be her last chance to be free in this country. Accordingly, the Petitioner is neither a danger to the community, nor a poor bail risk.

Further, to the extent the Government argues that it is the Petitioner that is the cause of her own detention by seeking to fight her deportation, this argument has been rejected by numerous courts. In Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003), the Sixth Circuit explained that, in a case involving detention of a criminal alien under Section 1226(c), "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of

relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time such determinations may take." (Id.)(emphasis added).

In the same vein, Judge Arterton in Cardoso v. Reno, 127 F.Supp.2d 106 (D.Conn.2001), rejected the Government's argument that Ms. Cardoso has the "metaphorical keys" to her own release. The Court held:

> "The Court also declines to accept the government's argument that this statutory mandatory detention passes constitutional muster because Ms. Cardoso has the metaphorical keys to her own release. Utilization of this supposed "key" would require Ms. Cardoso to submit to deportation, thus relinquishing the very right she is entitled to advance - to pursue her application for continued permanent residence in this country."

Cardoso, at 111.

Additionally, to the extent the Government believes the Petitioner may not ultimately prevail on her Petition for Review in The Second Circuit, and therefore, should still be detained, Judge Arterton rejected such an argument in Cardoso:

> "The Government argues that Ms. Cardoso's likelihood of success at her hearing is remote, given the nature of her criminal convictions on her Application for Naturalization...While the fact that discretionary relief is available does bear on the determination of the nature of the right at issue ...the potential outcome...does not. Such an approach in this Court's view, conflates two different questions, and collapses an alien's constitutional claim to be free of unreviewed mandatory detention pending deportation into a determination of the merits of the removal proceedings aginst him or her. The nature of the liberty interest affected by §236(c) is not the substantive right to remain in this country, but rather Ms. Carodoso's right to

> rebut the purpose of her automatic detention while the ultimate question of her removability is being decided."

Cardoso, at 112.

See also Parlak v. Baker, 374 F.Supp.2d 551, 561 (E.D.Mich. 2005)(ordering pre-final order detainee released immediately ...[after] eight months of detention); Small v. Reno, 127 F.Supp.2d 305 (D.Conn.2000)(Hall, J.)(ordering that Petitioner be afforded bond hearing within seven days by INS).

As noted earlier, the Petitioner has substantial oustanding restitution. The Petitioner and her son have been able to make restitution payments on their joint and severable restitution while incarcerated. However, such attempts have been somewhat limited and have not resulted from any employment, but rather, from civil litigation commenced by the Petitioner's son. (A copy of the last restitution payment check is attached hereto as Exhibit A.) The Petitioner will be better situated to make restitution if she is released on bond pending resolution of her Petition for Review.

Next, one of the investors, Louise Totillo provided the Petitioner and her son an affidavit urging ICE not to deport them and allow for bail. A copy of this affidavit was attached to the Petitioner's Amended Petition as Exhibig G.

Additionally, the Petitioner's civil litigation counsel has provided ICE an affidavit stating that the Petitioner's presence and attendance in the proceedings entitled Yalincak, et al v. Barack, et al., Case No. 3:07-CV-00311 (AVC) is necessary for successful prosecution of that action. Moreover, any recoveries by the Petitioner may certainly be applied to her outstanding restitution pursuant to 18 U.S.C. §§3663 and 3664.

Finally, the Petitioner's medical condition is very costly and continuing treatment at public tax payer's expense, when the Petitioner could conceivably pay her own expenses, if released, is another consideration.

For all the foregoing reasons, the Petition should be granted on these grounds.

2. Procedural Due Process

Additionally, the custody review procedures for individuals, such as the Petitioner are constitutionally insufficient. To wit: on August 22, 2008, the Petitioner's custody status will be reviewed for the first time. However, not surprisingly, in numeous conversations by the Petitioner's immigration counsel, Edwin T. Gania, with the Respondents' agents, the file review process, and the prospect for the Petitioner receiving parole, or an order of supervision, were practically "unlikely...because it is rarely granted.". In sum, the custody review procedures for individuals, such as the Petitioner, are constitutionally insufficient both as written and as applied.

Indeed, to hint at the result, before even conducting the requisite review, turns the entire administrative mechanism on its head.

Accordingly, there is no adequate administrative mechanism in place for the Petitioner to obtain a decision from a neutral abiter or appeal a custody decision by the Respondents in any meaningful way.

A number of courts have identified a substantial bias within ICE toward the continued detention of aliens, raising the risk of an erroneous deprivation to unconstitutionally high levels. See e.g., Phan v. Reno, 56 F.Supp.2d 1149, 1157 (W.D. Wash. 1999)("INS does not meaningfully and impartially review the Petitioner's custody status."). St. John v. McElroy, 917 F.Supp. 243, 251 (S.D.N.Y. 1996)("Due to political and community pressure, INS, an executive agency, has every incentive to continue to detain aliens with aggravated felony convictions, even though they have served their sentences, on the suspicion that they may continue to pose a danger to the community."); See also Rivera v. Demore, No. C. 99-3042 (TEH), 1999 WL 521177, at *7 (N.D.Cal. Jul. 13, 1999) (procedural due process requires that alien release determination be made by impartial adjudicator due to agency bias); and Small, at 127 F.Supp.2d 319-322 (D.Conn.2000) (Hall, J.)(finding procedural due process violation, and §236(c) excessive as applied to Petitioner).

Morever, Section 236(c) does not survive procedural due process scrutiny **as applied to her** because the private interest is fundamental, the risk of erroneous deprivation is high, and the government's burden is slight, compared to the rights at stake. Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

As the Supreme Court has held, "procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

And, "[p]rocedural due process protections are designed to help ensure accuracy in the truth finding process, and so are shaped to minimize substantively unfair or mistaken deprivations of life, liberty, or property by enabling persons to contest the basis upon which a state proposes to deprive them of protected intersts." Cardoso v. Reno, 127 F.Supp.2d 106, 116 (D.Conn.2001)(citing Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). See also Small, at 127 F.Supp.2d at 319-322. Here, because of the brief nature of the detention under Section 236(c), as interpreted by the Supreme Court in Demore, the continued detention of the Petitioner violates her procedural due process rights, where, due to a stay, she is unlikely to be moreved in the near future. See e.g., Koita v. Reno, 113 F.Supp.2d 737, 741 (M.D.Pa.2000).

D. **STATUTORY VIOLATION**

In the alternative, if the Petitioner's continued detention under INA §236(c) does not violate her rights as set forth above, and instead the Petitioner's custody by the Respondents is under operation of 8 U.S.C. §1231(a)(6), then, the Petitioner's continued detention violates 8 U.S.C. §1231(a)(6), as interpreted in Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioner's ninety-day statutory removal period and six-month presumptively reasonable period for continued removal efforts both have passed. Respondents are unable to remove the Petitioner to Turkey because Respondent Michael B. Mukasey, through counsel in the Court of Appeals, consented to a stay in connection with the Petitioner's pending Petition for Review. Moreover, there is no time frame for a decision by the Second Circuit, and therefore, there is no significant likelihood of removal in the reasonably forseeable future.

Similarly, in Clark v. Martinez, 125 S.Ct. 716, 727 (2005), the Supreme Court held that the continued indefinite detention of an alien under such circumstances in unreasonable and not authorized by 8 U.S.C. §1231(a)(6).

In sum, the Petitioner has shown that her continued detention, whether under 8 U.S.C. §1226(c) or under 8 U.S.C. §1231(a)(6), in excess of ten (10) months is excessive and not authorized by the applicable statute(s). The remaining

question is whether the Petitioner has "provid[ed] good reason to believe that there is no significant likelihood of removal in the reasonably forseeable future," making her continued detention "reasonably necessary to bring about" her removal. If so, the government must respond with sufficient evidence to rebut that showing. See Zadvydas, 533 U.S. at 689-690, 699; Nadarajah v. Gonzales, 443 F.3d at 1079-1080.

The Petitioner contends that her removal is not reasonably forseeable for two reasons. First, since a stay has been put in place, the Second Circuit may well reverse her removal order or remand her case for further administrative proceedings because her petition for review advances substantial meritorious arguments that the IJ erred in ruling on her various application for relief. Second, regardless of the likelihod of prevailing on her petition for review, her removal is not significantly likely to happen in the forseeable future because there is no time frame for a decision by the Second Circuit. See Martinez v. Gonzales, 504 F.Supp.2d 887, 899 (C.D.Cal. Aug. 17, 2007) (noting uncertain time frame for a decision from Ninth Circuit and ordering release from continued indefinite detention); Nadarajah, 443 F.3d at 1081.

Further, the Petitioner would also note the following: a stay of removal is not automatic; it is granted only if the petitioner can show "the likelihood of success on the merits, irreparable injury if a stay is denied...and [in]

the public interest." Mohammed v. Reno, 309 F.3d 95 (2d Cir. 2002). See also Andreiu v. Ashcroft, 253 F.3d 477, 484 (9th Cir. 2001)(en banc). In the instant case, the Respondent, Michael B. Mukasey, through his counsel in the Petition for Review, consented to the stay. (Pet. at ¶62 n.2). In fact, the Petitioner has twice been on her way to the airport and brought back, after the local DHS and/or ICE agents confirmed that they were not to remove the Petitioner. Therefore, there is no reason to believe, that, in one month, two month, or even one years time, the situation will change, until a decision is rendered by the Second Circuit.

Accordingly, the Petitioner's continued indefinite detention is unauthorized by either 8 U.S.C. §1226(c), or 8 U.S.C. §1231(a)(6).

D. **EQUAL PROTECTION**

The Respondents continued detention of the Petitioner violates her rights under the Equal Protection Clause where similarly situated aliens have been treated differently.

The custody review process both as written and as applied by the Respondents is wholly insufficient and produces arbitrary and capricious results that vary from one alien to another and produces an environment where similarly situated aliens receive dfferent results, and therefore, are treated differently.

The Respondents do not provide a meaningful and impartial review of the Petitioner's custody status, and

absent relief from this Court, it is unlikely that <u>this</u> Petitioner will ever receive a meaningful and impartial review of her custody status that comports with her substantial and procedural due process rights as guaranteed by the United States Constitution. <u>See</u> <u>Phan</u>, supra at 1157; <u>St. John</u>, supra at 251; <u>Rivera</u>, supra at 1999 WL 521177, *7.

E. **<u>RELIEF</u>**

The Petitioner respectfully requests that this Court grant her a writ of habeas corpus, and order the Respondents to afford her an immediate bond hearing, or in the alternative, this Court exercise its habeas jurisdiction and convene a bond hearing for the Petitioner. <u>See</u> <u>Madrane</u>, 520 F.Supp.2d at 668-669 (noting that Court has authority to convene bond hearing in lieu of referring matter to immigration for a bond hearing).

III. **<u>CONCLUSION</u>**

**WHEREFORE**, the Petitioner prays this Court grant her a writ of habeas corpus, together with such other and further relief as it deems just and proper.

Dated: August 4, 2008

Respectfully submitted,
Petitioner Pro Se

A. Yalincak

Ayfer Yalincak
A 73-393-720
Donald W. Wyatt Facility
950 High St.
Central Falls, RI 02863

RECEIPT FOR PAYMENT
DISTRICT COURT OF
CONNECTICUT
NEW HAVEN DIVISION

N024577

RECEIVED FROM:

YALINCAK, HAKAN

Case Number: 3:05CR111

F/U/B/O:

Party ID:

Tender Type: CHECK
08-6855XX $10,000.00

Restitution

Remarks: 100350313, JBA
3:05cr111 & 05cr153

Subtotal: $10,000.00

Receipt Total: $10,000.00

* Checks and drafts are accepted subject to collections and full credit will only be given when the check or draft has been accepted by the financial institution on which it was drawn.

Ex. A

COMMUNITY
HEALTH ASSOCIATES

54 South Main Street, Newtown, Connecticut 06470
*Tel:* (203) 270-1077 *Fax:* (203) 270-0420

October 27, 2005

US District Court
District of Connecticut
Richard C. Lee US Court House
141 Church Street
New Haven, CT. 06510

Ref: 3:05-cr-00153-JBA-2, Ayfer Yalincak

Dear Honorable Judge Janet Bond Arterton,

My name is Jeffrey Friedman, M.D. I am the Medical Director for the Community Health Associates. I was Mrs. Ayfer Yalincak's primary care physician along with Dr. Michael Taweh and Lisa N. Haut, A.P.R.N. from summer of 2000 to summer of 2004. Mrs. Yalincak was under my care for insulin dependant diabetes, unstable angina, and heart disease. Mrs. Yalincak was being treated with 70/30 Humulin Insulin, nitroglycerin for her unstable angina, Lipitor for her high cholesterol and Fuorosemide for the swelling in her legs. In October of 2001, she suffered a stroke and in July 2002, she underwent a hysterectomy at Danbury Hospital. Mrs Yalincak's medical condition was frequently unstable and she frequented the Danbury Hospital Emergency room many times. It is my medical opinion that given her past history she needs careful medical monitoring and care.

If I may be of further assistance please feel free to contact me.

Sincerely,

Jeffrey Friedman, M.D.

Cc:

Ayfer Yalincak
Robert Byers, Esq.
Omer Yalincak

EXHIBIT [redacted]
B

Generations Family Health Center, Inc.

February 1, 2007

RE: Ayfer Yalincak
DOB: 7/15/54

To whom it may concern,

Ms. Yalincak has multiple serious chronic medical problems. Her medical conditions include Diabetes, Hypertension, Hyperlipidemia, Congestive Heart Failure, Depression, Heart Murmur and History of Myocardial Infarctions (one in 2003 and one in 2005). Ayfer has also been referred to a Pulmonary Specialist related to 2 Nodules in the left lower lobe of the left lung found on CT scan. The Etiology of these nodes is unknown. Ms. Yalincak has recently complained of abdominal discomfort. She was seen at the Hartford Emergency Room where and had a MRI done as well as a CAT scan of the abdomen which showed a stable indeterminate hepatic mass. We are referring her to a GI Specialist for evaluation.
If I can be of any further assistance please feel free to contact me.

Sincerely,

Scott M. Credit, APRN

*Keeping Families Healthy Throughout Generations*

1315 Main Street • Willimantic, CT 06226 • Phone 860.450.7471 • FAX 860.450.7396
[illegible] Street • Danielson, CT 06239 • Phone 860.774.7501 • FAX [illegible]
[illegible] Washington Street • Suite 310 • Norwich, CT 06360 • Phone 860.885.[illegible] • FAX [illegible]
[illegible] • Suite 2 • Brooklyn, CT 06234 • Phone 860.779.[illegible] • FAX [illegible]
www.genhealth.org

WOMKAHATCH WING
112 MANSFIELD AVENUE
WILLIMANTIC, CT 06226
TELEPHONE (860) 456-7279
FAX (860) 450-0269

obert J. Bundy, M.D., L.L.C.

BOARD CERTIFICATION
PULMONARY/CRITICAL CARE/SLEEP MEDICINE

January 24, 2007

Re:Ayfer Yalincak (DOB-7-15-54)
216 Eastford Rd PO Box 126
Eastford, Ct. 06242

To Whom It May Concern:

Ms Yalincak was seen in my office on 1/22/07 for consultation and evaluation for a lung nodule and a question of lung cancer. She was also evaluated for dyspnea and shortness Of breath. She is to be seen in follow up on 5/1/7/07 and will be scheduled for testing in 4 months for pulmonary function testing and a repeat Chest Cat Scan.

If you require additional information, please contact the undersigned. Thank you.

Respectfully,

Robert J. Bundy, M.D.