UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AYFER YALINCAK<br>Petitioner<br><br>v.<br><br>MICHAEL CHERTOFF, as secretary of the Department of Homeland Security, et al<br>Respondents | : | No. 3:08cv1193(JBA) |

**RESPONDENTS' OPPOSITION TO THE HABEAS PETITION AND RESPONSE TO THE ORDER TO SHOW CAUSE**

## I. Introduction

On August 6, 2008, Ayfer Yalincak, ("Petitioner"), filed a Petition for Writ of Habeas Corpus.[1] In this petition, Petitioner argues that she is being subject to indefinite detention at the Wyatt Detention Center in Rhode Island and seeks release pending the resolution of her Petition for Review filed in the United States Court of Appeals for the Second Circuit.

Defendants, Michael Chertoff; Michael Mukasey; Thomas Hogan; and the District Director for Immigration and Customs Enforcement, Hartford, Connecticut (the federal "defendants"),

---

[1] Habeas corpus jurisdiction is not derived from the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252. Habeas corpus jurisdiction is derived from 28 U.S.C. § 2241. Defendants maintain that there is no habeas corpus jurisdiction in this case.

argue that, pursuant to 28 U.S.C. § 2241, this Court lacks jurisdiction over this habeas petition. Additionally, defendants assert that petitioner, who is subject to a Final Order of Removal, is being detained pursuant to Section 241(a) of the INA, not Section 236. As such, petitioner's detention has been reasonable and proper and has not violated his constitutional rights. Defendants maintain that petitioner's removal is ready to be effected, and his detention has only been prolonged by his own efforts to seek a stay and review. Defendants respectfully submit that the Petition for Writ of Habeas Corpus should be denied.

## II. Factual Background

After completion of a federal criminal sentence for conviction of conspiracy to commit wire fraud, Petitioner was taken into custody by Immigration and Customs Enforcement for removal proceedings. On January 16, 2008, the Immigration Judge denied Petitioner relief and ordered her removed to Turkey. Petitioner appealed this decision to the Board of Immigration Appeals ("BIA"). On May 22, 2008, the BIA denied the appeal. Thus, at that time, petitioner was subject to a Final Order of Removal.

On June 18, 2008, Petitioner filed a petition for review in the United States Court of Appeals for the Second Circuit. She thereafter on July 15, 2008, filed a motion to stay removal in the United States Court of Appeals for the Second Circuit. While a formal stay has not been issued, there is a general forbearance policy in the Second Circuit. According to this policy, an alien who has a petition pending in the Second Circuit and has filed a motion for stay will not be removed until a final decision is rendered. However, as a formal stay has not been entered, petitioner is still being detained in ICE custody pursuant to INA Section 241, not Section 236.

## III. Argument

### A. Habeas Jurisdiction

#### 1. The Proper Respondent in This Action is Either the Warden of The Facility Where Petitioner is Detained or the Field Office Director in Massachusetts -- Neither are Within the Boundaries of this Court's Jurisdiction

The text of the federal habeas corpus statute indicates that there is only one proper respondent to a habeas petition: "The writ . . . shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243; *see also* Fed. R. Civ. P. 81(a)(2) (same). The federal habeas statute also provides that a

court's habeas corpus jurisdiction is territorially limited: Habeas jurisdiction only extends to individuals and custodians within the boundaries of the court's district. 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions.").

As explained below and consistent with the reasoning of *Rumsfeld* v. *Padilla*, 542 U.S. 426 (2004), the Court should require aliens who are detained pending removal to name their immediate custodian rather than the Attorney General or some other remote supervisory official as respondent, and to file their habeas petition in their district of confinement.

It is a well-established general rule that a petitioner seeking a writ of habeas corpus must name as the respondent his "custodian": the official who holds the petitioner in what is alleged to be unlawful custody and has the ability, if need be, to produce the petitioner before the district court. *See* *Padilla*, 542 U.S. at 434-35 (28 U.S.C. § 2242 "straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner]'" -- thus, the Secretary of Defense was not a proper respondent in habeas petition filed by a prisoner detained by military authorities); *but see id.* n.8 (recognizing that the issue of whether the

Attorney General is a proper respondent in an immigration habeas petition was not before the Court which "declin[ed] to resolve [that issue]."); *see also Billiteri v. U.S. Board of Parole*, 541 F.2d 938, 948 (2d Cir. 1976); *Ex parte Endo*, 323 U.S. 283, 306 (1944) (writ is "'directed to, and served upon, not the person confined, but his jailer'" (citation omitted)); 8 U.S.C. § 2241(c)(1)-(3) (requiring that petitioner be "in custody" for writ to extend to him).

In *Padilla*, the Court reaffirmed the principle that has existed for over "100 years," that the habeas "provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *See Padilla*, 542 U.S. at 434-35 (citation omitted). The Supreme Court went on to state that in prisoner cases "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* ("there is generally only one proper respondent to a given prisoner's habeas petition."); *see also Blango v. Thornburg*, 942 F.2d 1487, 1491-92 (10th Cir. 1991); *Guerra v. Meese*, 786 F.2d 414, 416

(D.C. Cir. 1986); *Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945); *Jones v. Biddle*, 131 F.2d 853, 854 (8th Cir. 1942); *Roman v. Ashcroft*, 340 F.3d 314, 330 (6th Cir. 2003) (Gibbons, C.J., concurring) (collecting cases).

Thus, "for a court to entertain a habeas corpus action, it must have jurisdiction over the petitioner's custodian." *Billiteri*, 541 F.2d at 948; *see also Roman*, 340 F.3d at 319 ("[A] court has jurisdiction over a habeas corpus petition only if it has personal jurisdiction over the petitioner's custodian."). The Second Circuit recognized in *Billiteri* that "it would stretch the meaning of the term custodian beyond the limits established by the Supreme Court" to characterize as the custodian -- and thus the proper respondent -- an official or entity other than the prison warden who, in that capacity, exercises control and confines the prisoner in the manner that is challenged. 541 F.2d at 939. "The individual best able to produce the body of the person detained is that person's immediate custodian, his 'jailor' in the parlance of an earlier time." *Vasquez v. Reno*, 233 F.3d 688, 693 (1st Cir. 2000) (citations omitted). Thus, the rule "gives a natural, commonsense construction to the statute." *Id.*; *accord Roman*, 340 F.3d at 321-22.

Given that the same statutes govern all prisoner habeas

petitions, there is no reason to apply a different rule in the immigration context. As the United States Court of Appeals for the Second Court observed in *Henderson v. Reno*, 157 F.3d 106, 124-28 (2d Cir. 1998), "the Attorney General is designated, pursuant to statute, as the custodian of *all* federal prisoners, *see* 18 U.S.C. § 4001 (1994), yet no one seriously suggests that she is a proper respondent in prisoner habeas cases." 157 F.3d at 126. For purposes of identifying the proper habeas respondent, the Attorney General's role with respect to detained aliens does not differ materially from his role with respect to federal prisoners. *See Vasquez*, 233 F.3d at 693. The regulations promulgated by the Attorney General delegate most of his immigration-related functions to local Department of Homeland Security ("DHS") Field Office Directors, who are generally responsible for the administration and enforcement of the Immigration and Nationality Act ("INA") within the geographical confines of their districts. *See* 8 C.F.R. § 100.2(d)(2)(ii); *see generally Castro-Carvache v. INS*, 911 F. Supp. 843, 855 (E.D. Pa. 1995) (custody issues "must be addressed, at least in the first instance, by the District Director"). Therefore, while the Attorney General has ultimate authority over certain immigration matters, the Field Office Directors have primary responsibility

for overseeing and carrying out detention and removal functions in their region.

In *Henderson,* the Second Circuit, in *dicta*, engaged in a lengthy discussion recognizing arguments on both sides of the issue of whether the Attorney General is the appropriate respondent in an immigration petition. *See*, *Henderson,* 157 F.3d at 121-28. The Court's analysis began from the premise that if New York's long-arm statute would permit service of process to be effected on the alien's immediate custodian (the INS New Orleans District Director), the question of whether the Attorney General can be a named respondent in an immigration habeas would be mooted. *See id.* at 122-123. Accordingly, this Court certified to the New York Court of Appeals the question of whether New York's long-arm statute would permit service of process on the INS New Orleans District Director. *Id.* at 124. The New York Court of Appeals denied the request for certification. *See Yesil v. Reno*, 92 N.Y.2d 455 (1998). The case was ultimately settled and, therefore, the propriety of the Attorney General being named as a respondent in an alien's habeas petition was never decided. *See Yesil v. Reno*, 175 F.3d 287, 288-89 (2d Cir. 1999).

Although *Henderson* did not ultimately decide the question, it nevertheless framed many of the relevant arguments regarding

who the proper respondent is in an immigration habeas case. On one side, the Second Circuit noted that as a general rule the proper custodian is the individual with "day-to-day control over the petitioner" and stated that "for the great majority of habeas cases . . . the rule made sense, and still does." *Henderson*, 157 F.3d at 122. The Second Circuit also recognized that in the same way that the Attorney General is the ultimate custodian of all immigration petitioners, the Attorney General is also the ultimate custodian of all federal prisoners and "yet no one seriously suggests that she is a proper respondent in the prisoner habeas cases." *Id.* at 126. The Second Circuit further recognized that the INS district director in charge of the geographical area where the alien is confined is equivalent to the prison warden in the federal prisoner habeas context. *Id.*

The Second Circuit also suggested that the Attorney General's role in immigration matters is "extraordinary and pervasive," making it "unique" enough that this factor may militate in favor of allowing the Attorney General to be named as the proper respondent to an immigration habeas petition. *Id.* at 126. The Second Circuit further considered how practical considerations might weigh for or against naming the Attorney General as a proper respondent. For example, certain districts

containing immigration detention facilities, with over-crowded dockets, might find some relief if the Attorney General could be named as the respondent and habeas petitioners were therefore able to bring petitions outside their district of confinement. *Id.* at 128. On the other hand, the Second Circuit recognized that traditional venue considerations could lead to similar overcrowding in districts containing large immigrant populations -- "districts that in many cases are already among the busiest in the nation." *Id.* Given the "powerful arguments on each side" the Second Circuit refrained from deciding the issue unnecessarily. *Id.* However, pre-*Padilla*, several Courts in this District found the Attorney General to be a proper defendant. *See Mohamed v. Ashcroft*, No. Civ. 3:02CV55 (PCD), 2002 WL 32506934 (D. Conn. Dec. 13, 2002).

In the 2004 *Padilla* decision, however, the Supreme Court had occasion to speak to the role that many of these considerations should play in a court's analysis of who is the proper respondent in a habeas petition. Although it specifically reserved decision on who the proper respondent in an immigration habeas should be, 542 U.S. at 445 n.8, the Court's analysis nevertheless provided significant guidance.

First, the Supreme Court observed, as did the Second Circuit

in *Henderson*, that certain statutes carved out exceptions to the immediate-custodian rule. As the Supreme Court explained, however, the fact that Congress had felt compelled to enact these exceptions reinforced the "commonsense reading of § 2241(a)" that habeas petitions aimed at relieving an individual from confinement are "'issuable only in the district of confinement.'" *Padilla*, 542 U.S. at 442-43 (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Accordingly, *Padilla* teaches that the existence of statutory exceptions to the default immediate-custodian rule cannot be said to support an interpretation of § 2241(a) that permits filing of habeas petitions outside the district of confinement.

Second, the Supreme Court rejected the notion that long-arm jurisdictional statutes (which vary from state to state) should impact the question of who is the proper respondent in a habeas case. *Padilla*, 542 U.S. at 445 ("*Braden* in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdictions."). Instead, the Court re-affirmed a formal and literal application of the habeas statute, finding that there is generally only one proper respondent -- the petitioner's immediate custodian -- and one district in which a habeas

petition should be filed -- the district in which the prisoner is detained. *See Padilla*, 542 U.S. at 442-448.

Third, the Supreme Court recognized that the dangers of forum shopping (described in *Henderson*) weighed in favor of maintaining a strict immediate-custodian rule. Without that rule, a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction. The result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation [to § 2241] 137 years ago. *Padilla*, 542 U.S. at 447.

Here, the official who has custody of petitioner and who can produce her is the warden of the facility where he is detained and/or the ICE Field Office Director in Massachusetts, not any official located in the District of Connecticut. *See* 8 C.F.R. §§ 100.2(d)(2)(ii) (2005) (Service districts, "[h]eaded by district directors . . . are responsible for the administration and enforcement of the Act and all other laws relating to immigration and naturalization within their assigned geographic areas of activity") & 100.4(b)(2) (2005) (geographical jurisdiction of INS's Boston's district - which includes Rhode Island and

Connecticut). All of the named federal defendants do not control Petitioner's custody and should be dismissed.

Additionally, petitioner is detained in Rhode Island pending removal, yet she has filed a habeas petition in the District of Connecticut. As stated by the Supreme Court, habeas petitions aimed at relieving an individual from confinement are "'issuable only in the district of confinement.'" *Padilla*, 542 U.S. at 442-43 (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Accordingly, § 2241(a) does not permit the filing of habeas petitions outside the district of confinement.

Since *Padilla*, several district court cases have found habeas jurisdiction outside the district of confinement. In so doing, these courts, including this Court, have found that once the proper defendant is named, the "next question is whether the [court] has personal jurisdiction over the Boston Field Office Director." *Abner v. Secretary of the Department of Homeland Security*, No. 06CV308 (JBA), 2006 WL 1699607, at *4 (D. Conn. June 19, 2006).

In *Abner*, petitioner, who was subject to immigration proceedings in Connecticut, was detained in Massachusetts after the issuance of the Final Order of Removal. *Id.* at 1. Petitioner filed a habeas petition in the District of Connecticut

seeking a bond hearing. *Id.* at *2. In determining whether jurisdiction over the habeas petition existed, the Court separated its analysis into three questions: 1) who was the proper respondent; 2) did personal jurisdiction exist; and 3) was venue proper. *Id.* at 3. The Court found that the proper respondent was the Boston Field Office Director. *Id.* at 4. In determining personal jurisdiction, the Court first noted that the Boston Field Office Director had control over the State of Connecticut, and this satisfied the minimum contacts requirement. *Id.* Next, the Court analyzed Connecticut's long arm statute and found that "personal jurisdiction could exist under [the transacts business] or [commits a tort in the sate] provisions. *Id.* at *5. Lastly, in interpreting the "traditional principles of venue," (where defendant resides and where the events occurred), the Court found that venue was appropriate in Connecticut, where the immigration proceedings took place. *Id.* at *6. *See also, Patterson v. INS*, No. 3:03CV1363 (SRU), 2004 WL 1114575 (D. Conn. May 14, 2004) (Attorney General is the proper respondent, and the Court does have jurisdiction); *Abimbola v. Ridge*, No. 3:04CV856 (MRK), 2005 WL 588769 (D. Conn. Mar. 7, 2005) ("The Court assumes, without deciding, that it has jurisdiction ....").

The defendants do not dispute that the proper respondent is either the warden of the facility where petitioner is detained or the Boston Field Office Director. However, defendants maintain that the personal jurisdiction long-arm statute analysis adopted by courts is improper to obtain jurisdiction over custodians outside this jurisdiction and the federal defendants respectfully submit that this Court revisit the issue. *Padilla*, 542 U.S. at 445 ("*Braden* in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdictions."). Indeed, the Supreme Court re-affirmed a formal and literal application of the habeas statute, finding that there is generally only one proper respondent -- the petitioner's immediate custodian -- and one district in which a habeas petition should be filed -- the district in which the prisoner is detained. *See Padilla*, 542 U.S. at 442-448. *See also, Ali v. Immigration and Customs Enforcement*, No. 3:07-CV-419 (RNC), 2007 WL 926841, at *1 (D. Conn. Mar. 23, 2007) (finding the court lacked jurisdiction over habeas seeking release from detention because alien was detained in Vermont); *Carter v. Meyers*, No. 04 Civ. 10169 (SAS), 2004 WL 3030049 (S.D.N.Y. Dec. 30, 2004) (although venue might be proper in the district where proceedings were held, the court found it

lacked jurisdiction over the warden); *Berthold v. Ashcroft*, No. 3:02CV658 (CFD), 2003 WL 1056653, at *1 (D. Conn. Mar. 6, 2003) (finding that the proper respondent was the warden having "day-to-day control," and concluding that "the Attorney General, the Commissioner of the INS, the INS District Director in Connecticut, the INS and the U.S. Department of Justice [were] not proper respondents to [the] habeas action."); *Mills v. Lajoie*, No. 3:06CV956 (MRK), 2006 WL 3346193, at *3 (D. Conn. Nov. 17, 2006) (while the issue in this case involved the question of who had custody over the petitioner, the Court, quoting *Padilla*, stated that the "federal habeas statute straightforwardly provides that the proper respondent is 'the person' having custody over the petitioner.").

Here, petitioner does not claim that this case presents any extraordinary reason to deviate from the immediate-custodian rule. *See Padilla*, 542 U.S. at 436 n.9. There is no evidence that requiring petitioner to seek relief in the District of Rhode Island will interfere with her "access to habeas corpus relief," *Roman*, 340 F.3d at 325, especially in light of the fact that the sole relief petitioner seeks is a bond hearing regarding detention. Petitioner is not making any non-custodial challenge in this habeas petition. Thus, it is improbable that witnesses

or evidence from the State of Connecticut will be necessary to determine if petitioner is entitled to a bond hearing or, even if found to be eligible for such a hearing, whether she is entitled to bond. The government is not "manipulat[ing] its authority in an attempt to deny [petitioner] a meaningful opportunity for relief," *Roman*, 340 F.3d at 326; *see also Vasquez*, 233 F.3d at 696 (an "extraordinary circumstance" warranting naming of Attorney General might arise in case where "INS spirited an alien from one site to another in an attempt to manipulate jurisdiction," but petitioner "neither marshaled facts suggesting furtiveness nor made a showing of the elements necessary to demonstrate bad faith").

As such, the proper respondent to this habeas petition challenging petitioner's continued detention pending removal is the Warden of the Wyatt Detention Facility in Rhode Island (where petitioner is now confined) or the ICE Director in Boston, Massachusetts. *See Padilla*, 542 U.S. at 435-38; *Deng v. Garcia*, 352 F. Supp. 2d 373, 375-76 (E.D.N.Y. 2005) (as petitioner only challenged his immediate physical detention, "rather than the underlying decision of the immigration authorities," the Court found that this "'core habeas petition' must be addressed to his immediate custodian"); *Drakoulis v. Ashcroft*, 356 F. Supp. 2d 367

(S.D.N.Y. 2005) (same). Additionally, this case should have been filed in the District of Rhode Island, which is the district in which the petitioner is confined. Accordingly, petitioner's habeas petition should be dismissed or, alternatively, transferred to the United States District Court for the District of Rhode Island.

Even assuming the Court has jurisdiction to hear this habeas claim, petitioner has failed to establish that she will not be removed in the reasonably foreseeable future or that there is some impediment to her removal to Turkey.

**B. <u>Statues and Regulations Surrounding Detention</u>**

**1. <u>Overview of Pre-Order Detention</u>**

Immigration detention pending entry of an administrative final order of removal is governed by § 236 of the INA, 8 U.S.C. § 1226. That provision provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." INA § 236(a), 8 U.S.C. § 1226(a). Generally, the alien may be released on bond and/or an order of supervision, pending adjudication of the removal case. *Id.* The Attorney General "may rearrest an alien under [an] original warrant and [may] detain the alien," known as reinstatement proceedings. INA § 236(b), 8 U.S.C. § 1226(b).

Plaintiff, an alien who illegally reentered the United States, fell under this section.

In this pre-order context, initial custody or bond determinations are made by the Department of Homeland Security, pursuant to 8 C.F.R. § 1236.1, and are subject to the review of an immigration judge when review is sought by the alien. *See* 8 C.F.R. § 1003.19. The decision of the immigration judge may thereafter be appealed to the Board of Immigration Appeals. 8 C.F.R. §§ 1003.19(f), 1003.38. Finally, the "discretionary judgment regarding the application of [section 236] [is] not ... subject to [judicial] review," INA § 236(e), 8 U.S.C. § 1226(e), but constitutional challenges to § 236 are reviewable. *Demore v. Kim*, 538 U.S. 510, 521 (2003). However, petitioner's post-order detention is handled differently by the INA.

**2. <u>Administrative Final Order of Removal</u>**

Congress has provided that an order of removal is deemed "final" "upon a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the [Board]." 8 U.S.C. § 1101(47)(B); *see also* 8 C.F.R. § 1241.1 (in pertinent part specifying that failing to voluntarily depart or

Board affirmance of a removal order results in an administratively final order of removal). Once an alien is subject to a final order of removal, an alien's detention is governed by INA § 241(a), 8 U.S.C. § 1231(a). *Abimbola v. Ashcroft*, 378 F.3d 173, 180-81 (2d Cir. 2004) (Section 241(a) governs detention of aliens subject to a final order of removal, not Section 236(a)); *Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("INA § 241, 8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal.").

**3. Post-Order Detention**

**a. The removal period and Zadvydas**

Detention following entry of an administrative final order of removal is governed by § 241(a) of the INA, 8 U.S.C. § 1231(a). When an alien is ordered removed, the Attorney General has 90 days in which remove the alien. INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A). This is known as the "removal period." According to the statute:

> (B) The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the

> date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). If removal is not effected within this 90-day removal period, the Attorney General may either, with respect to aliens who have an aggravated felony/controlled substance conviction or who have been determined to be a flight risk or are unlikely to comply with the removal order, continue to detain the alien or release the alien subject to supervision. 8 U.S.C. § 1231(a)(6). In making this discretionary determination, a parole hearing is not required by the regulations governing Petitioner's detention, and the Immigration Court lacks jurisdiction to review bond/custody determinations. 8 C.F.R. §§ 241.4 and 241(a)(2).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court analyzed whether an alien admitted to the United States, but subsequently ordered removed, may continue to be detained beyond the 90-day removal period pursuant to § 241(a)(6) of the INA. *See* 533 U.S. at 682, 688-702.[2] Specifically, the Supreme Court

---

[2] *Zadvydas* applies only when the government is free to remove an alien, not when there is a judicial stay. *Zadvydas*, 522 U.S. at 684-85; *see*, also, INA § 241(a)(1)(B)(I), 8 U.S.C. § 1231(a)(1)(B)(I) (in pertinent part, if there is a judicial

held that § 241(a)(6) does not generally authorize the indefinite detention of removable aliens; rather, absent "special" circumstances, the statute permits the detention of such aliens only for a period reasonably necessary to bring about their removal. *Id.* at 698-99. Pursuant to this statutory interpretation, the Supreme Court determined that six (6) months was a presumptively reasonable period. *Id.* at 701.

Thus, once a presumptively-reasonable six-month period of post-removal detention has passed, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. *Id.*; *see also* 8 C.F.R. § 241.13. Where there is no significant likelihood of removal in the reasonably foreseeable future, the alien should be released from confinement. *Id.*

### b. Suspension of the removal period

Congress also has provided for the suspension of the removal period, during which time the alien "may" remain in detention,

---

stay issued pending review of a removal order, the removal period "**begins** on the date of the court's final order.") (emphasis added).

"if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or **acts to prevent the alien's removal subject to an order of removal**." INA § 241(a)(1)(C); 8 U.S.C. § 1241(a)(1)(C) (emphasis added). Detention under § 241(a)(1)(C) is discretionary. An alien will receive a post-order custody review from ICE at the point that s/he has been detained for 90 days under § 241(a) of the INA, and subsequent post-order custody reviews as provided by regulation. *See* 8 C.F.R. § 241.4.

### c. **Detention under § 241 with a judicial stay of removal**

The government may also detain an alien under § 241(a) of the INA even if the alien has filed a petition for review and received a stay of removal as a result. INA § 241(a)(1)(C); 8 U.S.C. § 1241(a)(1)(C) (stating an alien "may" remain detained if he or she acts to prevent his or her removal).

Section 242 of the INA, 8 U.S.C. § 1252, the judicial review provisions, state that a petition for review of orders of removal "shall be filed with the Court of Appeals for the judicial circuit in which the immigration judge completed proceedings." INA § 242(b)(2), 8 U.S.C. § 1252(b)(2). Subsection 242(b) adds that service of the petition for review "does not stay the

removal of an alien pending the court's decision on the petition, **unless the court orders otherwise.**" INA § 242(b)(3)(B), 8 U.S.C. § 1252(b)(3)(B) (emphasis added). "This provision establishes that courts retain the power to stay an alien's removal pending a petition for review."[3] *Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir. 2001). Thus, subsection 242(b) is the source of authority for the Circuit Court's ability to stay removal. Despite this authority, Congress has unequivocally provided that "[t]his subsection [242(b)] . . . **does not prevent** the Attorney General after a final order of removal has been issued, **from detaining the alien under section 1231(a) [INA § 241] of this title**[.]" INA § 242(b)(8)(A), 8 U.S.C. § 1252(b)(8)(A) (emphasis added). Therefore, a circuit court stay of removal does not impact the government's ability to detain an alien under § 241.

**d. Bond review authority with DHS**

The determination to continue custody or release an alien

---

[3] In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 (1996), which significantly revised portions of the INA. Prior to passage of IIRIRA, an alien who appealed a decision of the Board to a United States Court of Appeals was automatically entitled to a stay of removal, unless the court directed otherwise. *See* 8 U.S.C. § 1105a(a)(3) (1994), repealed by 8 U.S.C. § 1252(b)(3)(B). IIRIRA eliminated the automatic stay provision.

under § 241 of the INA has been delegated exclusively to the Department of Homeland Security. *See* 8 U.S.C. § 1231(a)(6); 6 U.S.C. § 557 (re-delegating authority from the INS to the Department of Homeland Security); 8 C.F.R. § 241.4(c) (delegating the Attorney General's statutory authority to make custody determinations to the officials within the Department of Homeland Security).

### C. **Petitioner's Detention is Pursuant to Section 241(a) not Section 236**

As an alien under an administrative final order of removal, Petitioner is detained under § 241(a) of the INA, which is aptly entitled "Detention and removal of aliens **ordered removed**." 8 U.S.C. § 1231(a) (emphasis added); *Zadvydas*, *supra*, 533 U.S. at 683 ("After entry of a final removal order and during the 90-day removal period . . . aliens **must** be held in custody.") (emphasis added). The alternate provision, § 236(a), expressly applies only to situations wherein there is "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Here, petitioner's order of removal became administratively final on June 18, 2008, the date the BIA denied his administrative appeal. Since that time, petitioner has filed a Petition for Review and a Motion for Stay with the United

States Court of Appeals for the Second Circuit. While defendants have informally agreed not to remove Petitioner while this petition is under review, the Second Circuit has not stayed her final order of removal. As the removal period has begun pursuant to 8 U.S.C. § 1231(a)(1)(B), petitioner is now being detained pursuant to INA § 241(a). *See* 8 U.S.C. § 1101(a)(47)(B) (defining final orders of removal); *see*, *also*, 8 C.F.R. § 1241.1 (specifying that BIA affirmance of a removal order results in an administratively final order of removal).

In *Wang v. Asccroft*, 320 F.3d 130, 147 (2d Cir. 2003), the Second Circuit Court of Appeals held, *in dicta*, that, "where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders it decision." *Id.* As petitioner was not granted a court ordered stay in this case, *Wang* does not apply.

To the extent the Court finds that a formal stay is not necessary to raise an INA § 236 versus a § 241 issue, defendants maintain that the one-sentence conclusion found in dicta in the *Wang* case should be analyzed in light of the very language of the immigration statutes.

First, defendants respectfully submit that the Second Circuit confused two distinct concepts -- when an order becomes

administratively final and when the 90-day removal period commences. Section 241(a)(1)(B) only concerns the commencement of removal period, and states that

> (B) Beginning of period - The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of this court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

INA § 241(a)(1)(B), 8 U.S.C. § 1231(a)(1)(B). This statute concerns calculation of the commencement of the removal period. It does not, "determine[] ... when an alien becomes subject to a final order o[f] removal." Section 241 simply does not address when an order becomes administratively final. Instead, the statute and regulations provide that an order becomes final upon the conclusion of the administrative proceedings. *See* 8 U.S.C. § 1101(a)(47)(B) ("order of deportation" becomes final upon the earlier of the Board of Immigration Appeals BIA decision or expiration of time to seek BIA review); 8 C.F.R. § 241.1 (2002) (identifying when "order of removal" is final -- without reference to whether judicial stay has been entered). The

statute and regulations validly and reasonably identify the endpoint of administrative removal proceedings and do so without creating or implying an exception for cases where a court may enter a judicial stay of an alien's removal.

Additionally, congressional intent that post-order detention should apply where a petition for review and a judicial stay of removal is in place is reflected in the plain language of the judicial review provisions. INA § 242, 8 U.S.C. § 1252. Specifically, this statute provides that petitions for review "shall be filed with the Court of Appeals for the judicial circuit in which the immigration judge completed proceedings. INS § 242(b)(2), 8 U.S.C. § 1252(b)(2). Subsection 242(b) also states that filing a petition for review will not automatically stay a removal. Under Section 242(b), serving a petition for review "does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." INA § 242(b)(3)(B), 8 U.S.C. § 1252 (b)(3)(B). More importantly, the judicial review provisions state that neither the filing of a petition for review or the issuance of a stay will prevent an alien from being detained under INA § 241. INA § 242(b)(8)(A), 8 U.S.C. § 1252(b)(8)(A). Congress clearly did not intend that an alien, otherwise ready to be removed, who

elects to pursue an appeal and a post-order judicial stay should be governed by the principals of § 236 of the INA.

Lastly, the Second Circuit has recognized the deference owed to the BIA's interpretation of the INA. *See, e.g., Kuhali v. Reno*, 266 F.3d 93, 101 (2d Cir. 2001) (citing *INS v. Aguire-Aguire*, 526 U.S. 415, 424 (1999) (reversing this Court's interpretation of a provision in the INA and stating that "the court should have applied the principles of deference described in *Chevron*" because it was facing questions implicating "'an agency's construction of the statute which it administers'")) (citing *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 843 (1984)). In an *en banc* decision, the Board of Immigration Appeals stated:

> [W]e find it important to note that § 236 of the Act [8 U.S.C. § 1226] applies to all custody determinations made while an alien is in **removal proceedings** "pending a decision on whether the alien is to be removed from the United States." There is a separate statutory and regulatory scheme which controls the detention and release of aliens **after an administratively final order**. See § 241 of the Act, 8 U.S.C. § 1231 (Supp. II 1996); 8 C.F.R. part 241, subpart A (1999).

*Matter of Joseph*, 22 I& N Dec. 660, 667 (BIA 1999) (en banc) (emphasis added); *see also De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003) ("Because a final removal order has been entered, De La Teja is no longer being detained pursuant to

§ 1226(c), which governs **only** detention prior to a final removal order.") (emphasis in original); *Chimbo v. Sec. of the Dept. of Homeland Security*, No. 3:04CV1671 (MRK), 2004 WL 2713154, at *7 (D. Conn. Nov. 18, 2004) (petitioner's removal became final when she failed to appeal the BIA decision, and she was being detained pursuant to Section 241); *Abimbola v. Ashcroft*, No. 01 CV 5568 (NG), 2002 WL 2003186, at *7 (E.D.N.Y. Aug. 28, 2002) (A petition for review was pending, but petitioner did not claim that the Second Circuit had stayed the final order of removal. The Court found that, without a stay, 8 U.S.C. § 1231(a)(1)(B)(ii) did not apply, and petitioner was detained under § 241.). However, in cases where a stay has entered, several courts have found that detention reverts back to Section 236 detention. *See*, *Fuller v. Gonzales*, No. 3:04CV2039 (SRU), 2005 WL 818614, at *3 (D. Conn. Apr. 8, 2005) (since a petition for review and an order of stay was entered, petitioner was detained under § 236 not § 241); *Milbin v. Ashcroft*, 293 F. Supp. 2d 158 (D. Conn. 2003) (since court issued a order of stay, detention was pursuant to § 236(c)); *Haynes v. Dept. of Homeland Security*, No. 3:CV-05-0339, 2005 WL 1606321 (M.D. Pa. July 8, 2005) (if there is a judicially ordered stay, the "alien continues to be detained under [INA] § 236 until the court renders its decision")

(quotation omitted); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221 (W.D. Wash. 2004) (where execution of final order of removal is automatically temporarily stayed upon filing of a request for stay, detention was pursuant to § 236 not § 241).

Regardless, petitioner does not have a court ordered stay and the dicta in *Wang* does not apply. Therefore, the only relevant issues is whether petitioner's detention under Section 241, without a bail hearing, violates the Constitution.

**D. <u>The Length of Petitioner's Detention is Reasonable</u>**

Petitioner's claims that her continued detention violates her substantive and procedural due process rights pursuant to INA § 236(c) are moot. *Wang*, 320 F.3d at 147 ("to the extent that [petitioner] previously may have had a cognizable due process argument under § 236, that claim has been rendered moot [because alien was now being held under Section 241(a)].") Instead, petitioner's present detention under Section 241(a) is mandatory for the first 90 days of the removal period and, thereafter, must be examined in accordance with the due process limitations set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[4]

---

[4] Several courts have found that pre-removal detention (under § 236) is entitled to the same constitutional review as post-removal detention. *See, Ly v. Hansen*, 351 F.3d 263, 267

In *Zadvydas*, the United States Supreme Court determined that during the "post-removal-period," indefinite detention is a constitutional violation and, under Section 241(a), an alien can only be detained pending removal for a "reasonable" amount of time. *Zadvydas* 533 U.S. at 682. The Supreme Court held that a six-month detention period is presumptively reasonable. *Id.* at 701. Once this six-month period has expired, the detained alien must establish that he/she has good cause to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden then shifts to the government to present evidence to rebut this showing. *Id.* "An alien may still be held until it is determined that removal will not take place within the reasonably foreseeable future." *Abimbola v. Ridge*, No. 05-2700-cv, 2006 WL 1408375, at *1 (2d Cir. May 18, 1006).

---

(6th Cir. 2004) (noting the split in the circuits and district courts as to wether a person can be indefinitely detained under § 236); *Lin v. Aschroft*, 183 F. Supp. 2d 551, 555 (D. Conn. 2002) (although alien was not subject to an administrative final order of removal, her continued detention pending the government's appeal of the Immigration Judge's decision, violated her Fifth Amendment right to due process of law and applying *Zadvydas* to § 236). As petitioner is being detained pursuant to § 241(a), § 236 does not apply. However, even if the Court were to find petitioner detained under § 236, her detention is reasonable as required under *Zadvydas*, for the reasons set forth in Section D above.

Petitioner's detention is constitutional because she has been detained for a reasonable amount of time. Petitioner was taken into custody on November 9, 2007 after completion of her federal criminal sentence. On January 16, 2008, an Immigration Judge denied her relief and found her removable. Petitioner thereafter appealed the Immigration Judge's decision to the BIA. On May 18, 2008, the BIA affirmed the Immigration Judge. This affirmance made the order of removal final. On June 18, 2008, petitioner filed a petition for review in the United States Court of Appeals for the Second Circuit, which is still pending.

As explained above, the removal period expires 90 days from the final order entered on May 18, 2008, or on or about August 18, 2008. However, the six-month detention period that has been found to be "presumptively reasonable" by the Supreme Court is not over until November 18, 2008. Once this six-month period has expired, on or about November 18, 2008, petitioner must establish that she has good cause to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas* 533 U.S. at 682. It is not until this point that the burden shifts to the government to present evidence to rebut this showing. *Id.*

The only reason petitioner remains in custody is because she

continues to fight her removal. "A self-inflicted wound should not establish grounds for [petitioner's] *Zadvydas* claim." *Abimbola*, 2006 WL 1408375, at *2 (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991)); *Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006) (alien's continued post-order detention beyond the 90-day removal period was permissible where it "occurred pursuant to [petitioner's] own procuring of stays incident to his legal challenges to the removal order"); *Thelemaque v. Ashcroft*, 363 F. Supp. 2d 198, 219 (D. Conn. 2005) ("[Petitioner's] own actions in seeking judicial review of his CAT claims do not give him grounds to complain that his removal is not reasonably possible within the meaning and intent of *Zadvydas*."); *Evangelista v. Ashcroft*, 204 F. Supp. 2d 405, 409 (E.D.N.Y. 2002) (petitioner's reliance on *Zadvydas* was "disingenuous" when "the sole reason he is being held is his requested stay of deportation").

Here, it is not the immigration authorities who have caused delays in the completion of petitioner's removal proceedings. Instead, petitioner's own request to stay the removal proceedings and her challenge to the final order of removal are the cause of the delay in this case. Petitioner's actions are the sole reason the removal has not occurred.

## IV. Conclusion

For the reasons set forth above, defendants move to dismiss this habeas petition for lack of jurisdiction. Alternatively, defendants argue that petitioner is detained pursuant to § 241(a) of the INA and, therefore, is not entitled to a bond hearing. Additionally, defendants maintain that they have not violated petitioner's constitutional rights by continuing her detention pursuant to INA § 241(a).

Respectfully submitted,

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY

DOUGLAS P. MORABITO
ASSISTANT U.S. ATTORNEY
ATTORNEY BAR # ct20962
157 CHURCH STREET
NEW HAVEN, CT 06510
TELEPHONE: (203) 821-3700
FAX: (203) 773-5373
Email: Douglas.morabito@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on August ~~11~~ 12, 2008 a copy of the foregoing Response to Order to Show Cause was served by mail on the following:

Ayfer Yalincak, Pro Se
Donald W. Wyatt
950 High Street
Central Falls, RI 02863

DOUGLAS P. MORABITO
ASSISTANT U.S. ATTORNEY
ATTORNEY BAR # ct20962
157 CHURCH STREET
NEW HAVEN, CT 06510
TELEPHONE: (203) 821-3700
FAX: (203) 773-5373
Email: Douglas.morabito@usdoj.gov